### FLEISCHMAN v. UNITED STATES.

### SAME v. UNITED STATES SHIPPING BOARD MERCHANT FLEET CORPORATION.

Nos. 13290, 13602.

District Court, E. D. New York.
April 5, 1934.

Lucien V. Axtell, of New York City, for libelant.

Howard W. Ameli, U. S. Atty., of Brooklyn, N. Y., and Harry J. Hanna, Sp. Asst. to U. S. Atty., of New York City, for respondents.

CAMPBELL, District Judge.

On stipulation the two above-entitled suits were tried together, and, as the facts are the same in both, one opinion will suffice.

This suit is brought to recover damages for personal injuries alleged to have been received by the libelant while employed as second assistant engineer on the U. S. S. Bird City.

On or about the 1st day of November, 1926, the libelant commenced a common-law action against the United States Shipping Board Emergency Fleet Corporation and Moore & McCormack Company, for the recovery of damages arising out of the injuries alleged to have been sustained as hereinafter set forth; in which action the defendants interposed answers, and the said action was duly noticed for trial and was on the calendar at the time the motion to dismiss hereinafter recited was made.

On the 6th day of January, 1930, the Supreme Court of the United States handed down its decision in Johnson et al. v. United States Shipping Board Emergency Fleet Corporation, 280 U. S. 320, 50 S. Ct. 118, 74 L. Ed. 451, holding that the United States of America, being the registered owner of the vessel, the exclusive cause of action on behalf of a seaman injured on any such vessel was by a suit in admiralty under the Suits in Admiralty Act (46 USCA § 741 et seq.).

Subsequent to such decision and in the month of April, 1930, the defendants in said common-law action, United States Shipping Board Emergency Fleet Corporation and Moore & McCormack Company, moved the court to dismiss the complaint in said action, upon the ground that the court had no jurisdiction thereof by virtue of the said decision of the United States Supreme Court, which motion was granted and an order dismissing said complaint was entered, not upon the merits, but solely and exclusively upon the ground that the court lacked jurisdiction.

Subsequent to the entry of the said order of dismissal as aforesaid, Congress by Act of June 30, 1932, 47 Stat. 420 (46 USCA § 745), amended section 5 of the Suits in Admiralty Act of March 9, 1920, 41 Stat. 526, which had limited the time of bringing actions thereunder to a period of two years after the cause of action arose, so as to provide as follows: "Suits as authorized in this chapter shall be brought within two years after the cause of action arises: Provided further, That the limitations in this section contained for the commencement of suits hereunder shall not bar any suit against the United States or the United States Shipping Board Merchant Fleet Corporation, formerly known as the United States Shipping Board Emergency Fleet Corporation, brought hereunder on or before December 31, 1932, if such suit is based upon a cause of action whereon a prior suit in admiralty or an action at law or an action under subdivision (1) of section 250 of Title 28, was commenced prior to January 6, 1930, and was or may hereafter be dismissed because not commenced within the time or in the manner prescribed in this section, or otherwise not commenced or prosecuted in accordance with its provisions: Provided further, That such prior suit must have been commenced within the statutory period of limitation for common-law actions against the United States, cognizable in the Court of Claims: Provided further, that there shall not be revived hereby any suit at law, in admiralty, or under subdivision (1) of section 250 of Title 28 heretofore or hereafter dismissed for lack of prosecution after filing of suit."

On the 5th day of August, 1932, the libelant filed the libel in the first above-entitled suit, and on December 30, 1932, filed the libel in the second above-entitled suit. The cause of action alleged in both of the above-entitled suits is the same cause of action as that al-

leged in the common-law action in which the complaint had been dismissed, and the above-entitled suits are properly brought under the said Amendatory Act of June 30, 1932.

I find it unnecessary to enter into any extended reasoning for so holding, as my reasons are fully set forth in Adders v. United States, 5 F. Supp. 457, in this court, Admiralty No. 13604, decided on September 5, 1933, and on that reasoning I now rely. The decree in that case was affirmed by the Circuit Court of Appeals of this Circuit, on April 2, 1934 (70 F.(2d) 371).

The respondent United States of America was, at all the times hereinafter mentioned, the owner of the U. S. S. Bird City, and was at all of such times and still is a corporation sovereign.

The respondent United States Shipping Board Merchant Fleet Corporation is a corporation of the District of Columbia, and the successor of the United States Shipping Board Emergency Fleet Corporation, a corporation of the District of Columbia, and during all the times hereinafter mentioned the operator of the U. S. S. Bird City.

On September 14, 1925, the libelant, at New York, signed on the steamship Bird City as second assistant engineer, at $165 per month and found.

The libelant had held a chief engineer's license since 1923, and had been first assistant engineer on four different ships.

On October 2, 1926, at about 5:45 o'clock p. m., the Bird City was lying at Moore & McCormack's dock at the foot of Twentieth street, East River, head in toward the shore, with the port side to the dock, a long covered pier. The Bird City had finished discharging cargo at about 3:20 o'clock p. m. It was high tide at that pier at 5:45 o'clock p. m., and the day was cloudy. The libelant had partaken of his supper, washed and dressed to go ashore as his duty for the day was ended.

As a means of egress and ingress there had been rigged a brow gangway, which was made fast to a turntable on the forward end of the deck house amidships where the accommodation ladder is usually connected. The gangway was of timber running down the length, with crosspieces on the bottom and heavy timbers on the sides for a guide rail on which there were stanchions with guide ropes going right down to the bottom. The gangway was three feet or more wide, and running across the upper side of the timbers forming the gangway were cleats originally two inches high and a foot and one-half to two feet apart.

This gangway ran aft parallel or nearly so with the side of the vessel, and was hooked at the bottom with a bridle and fall down from a boat davit up on the boat deck.

The gangway was swung at an angle of about 45 degrees.

There is a conflict in the evidence as to the position of the scupper from the toilet on the port side, but I am convinced that this scupper was from 12 to 15 feet aft of the lower end of the gangway, and that it did not discharge water and débris on the gangplank.

The gangplank was not greasy.

The gangplank was partly over the stringpiece and partly over the water as is customary with such gangplanks. There is a conflict as to the height of the end of the gangway over the stringpiece, but I am convinced that it was not any such height as contended by the libelant and his witnesses, but on the contrary of a height that made it easily accessible.

This is evident as the gangway in question was the only means of entering or leaving the vessel, and had been used for two days by the officers and members of the crew, longshoremen and others entering and leaving the ship, and had been used that very afternoon by the wife of the chief engineer.

This gangway had been used by the libelant in going ashore and returning the evening before the day in question, and was used by Mr. Harris, the second officer, who came to libelant's assistance.

Libelant says the cleats across the upper side of the gangway were worn in places, but that none were missing.

The gangway was well lighted by a cluster of lights.

That the libelant fell and was injured is beyond question; but he is the only eyewitness, and I am at a loss to find what negligence of the respondents, the agents or servants, caused the damages.

The damages to the libelant were not caused because without warning he fell off the lower end of the gangway; on the contrary, he slipped and fell when about the second cleat above the lower end of the gangway, and no cleat was missing which caused his fall. If the gangway was slippery because of dampness, it was due to the conditions of the weather, which were known to the libelant, and not to any discharge from the scupper.

The respondents could not guard against dampness due to weather conditions.

The libelant did not suffer any injury because the gangway was partly over the water; on the contrary, after slipping on the gangplank the libelant fell on the stringpiece.

The libelant was not on duty, had used the gangway the night before, knew of its condition, and assumed the risk incident to weather conditions.

The gangway had for two days been safely used by a number of people, including libelant, and no change in the gangway was shown.

The gangway was properly constructed, properly lighted, and had proper guide ropes, and was a gangway customarily used.

Some criticism is directed to the fact that the gangway was not put out on the pier at right angles to the ship, instead of parallel to the ship, but that is answered by showing that the doors on the dock were filled with cargo.

The respondents were not insurers, and the mere fact that libelant suffered injury does not warrant recovery. (Pittsburgh S. S. Co. v. Palo) Zenith City (C. C. A.) 64 F.(2d) 198, 1933 A. M. C. 1031.

In order to recover the libelant must show with reasonable certainty that he was injured through breach of duty, or negligence on the part of the respondents, or either of them, or facts for the application of the doctrine of res ipsa loquitur. Edgar F. Luckenbach (C. C. A.) 31 F.(2d) 1015, 1929 A. M. C. 737; San Antonio & A. P. Ry. v. Wagner, 241 U. S. 476, 36 S. Ct. 626, 60 L. Ed. 1110; Illinois Central R. R. Co. v. Skaggs, 240 U. S. 66, 36 S. Ct. 249, 60 L. Ed. 528.

The libelant was not under orders at the time of his injury, and he assumed the ordinary risks incident to his employment and those which were obvious and known to him, and in no event could recover more than maintenance and cure. Holm v. Cities Service Transp. Co. (C. C. A.) 60 F.(2d) 721; The Iroquois, 194 U. S. 240, 24 S. Ct. 640, 48 L. Ed. 955.

The libelant cannot recover for maintenance and cure, as he received attention at a marine hospital and has expended nothing for cure. (Cummins v. Wry) Balsa (C. C. A.) 10 F.(2d) 408, 1926 A. M. C. 451.

The libelant has failed to show by a fair preponderance of the evidence that the respondents, their agents and servants, or either of them, negligently caused or contributed in any way to the damages received by him in slipping on and falling from the gangway in question, and the said respondents are, and each of them is, wholly without fault.

The respondents in each of the above-entitled suits are entitled to decrees against the libelant dismissing the libels as to the respondents respectively, with costs.

Decrees may be entered in accordance with this opinion. Settle decrees on notice.

If this opinion is not considered a sufficient compliance with rule 46½ of the Rules in Admiralty (28 USCA § 723), proposed findings of fact and conclusions of law in accordance with this opinion may be submitted for the assistance of the court, as provided by the rules of this court.