### THE POINT FERMIN. *

### NICOLAISEN v. SWAYNE & HOYT, LIMITED.

### No. 7198.

Circuit Court of Appeals, Fifth Circuit.
May 1, 1934.

*Petition for rehearing denied June 13, 1934.

Carl G. Stearns and Douglas W. Mc-Gregor, both of Houston, Tex., for appellant.

J. Newton Rayzor, of Houston, Tex., for appellee.

Before BRYAN, SIBLEY, and HUTCHESON, Circuit Judges.

BRYAN, Circuit Judge.

Hans Nicolaisen, a member of the crew of the steamship Point Fermin, filed a libel against that vessel for maintenance, and also to recover damages on the ground that the master failed to provide him with proper medical care and attention made necessary because of an injury to his hand, but instead required him to continue to work notwithstanding his injury, with the result that he had become permanently disabled. From a decree awarding $250 as maintenance but denying a claim for damages, he has taken this appeal.

Appellant, 48 years of age, an experienced seaman, was an oiler on the Point Fermin during a voyage from the Pacific Coast to Kingston, Jamaica, and beyond to ports in the Gulf of Mexico. Two days before the ship's arrival at Kingston appellant in catching hold of a steel rod, upon which he had just finished cutting threads, stuck a steel sliver into his right hand at the base of the third finger. By the next day the finger was swollen and causing considerable pain. Upon arrival at Kingston about noon, appellant requested the master for permission to go ashore and consult a physician. He was permitted to do this, but not until the next day when he was sent to a physician selected by the ship's agent. The physician examined his hand, bandaged it, gave him a solution with which to keep the bandage moist, warned him, as he claims, not to work or use his hand for several days, wrote and gave him an unsealed note of instructions addressed to "whom it may concern," for the guidance of the ship's officers and agents. Appellant returned to the ship about noon, a few minutes before it sailed for Tampico, delivered the physician's note to the master, to whom he also reported that the physician had told him not to use his hand or to do any work in the immediate future. There is some conflict between appellant and the master as to whether the advice about not using his hand or working was also in writing. Appellant testified that he read the note, and that it did contain such advice, whereas the master testified on direct examination that it did not, but only stated that the solution should be used to keep the bandage moist, although on cross-examination, in response to a leading question, he seems to have admitted that it did contain such a statement. There is too some conflict in the evidence as to whether appellant was required to do his regular work as oiler on the voyage from Kingston to Tampico, although there is no doubt that he actually did it. Appellant testified that the master told him he would have to stand his watch, as did also the first assistant engineer. As against this the master testified that he told appellant not to do any work, and appellant replied that he would not; and that later the chief engineer reported to him that appel-

lant was not doing anything. The chief engineer testified that he also told appellant he did not have to work, but admitted that he saw him working in the engine room. According to the first assistant engineer appellant worked of his own accord, although this witness admitted telling him that a slight injury was no excuse for not working. The testimony of the third assistant engineer who stood watch with appellant was that he told him to do the best he could and assisted him in his work. It took five days to go from Kingston to Tampico. Appellant's watches were from eight to twelve morning and night. He testified that during the first afternoon out of Kingston his hand yielded nicely to treatment and was in much better condition when he went on duty that night, but that this condition became very much worse before midnight. It is undisputed that from then on the swelling rapidly increased and the pain became much more severe. The evidence quite conclusively shows that it is necessary for an oiler to use both hands in performing his duties. Upon arrival at Tampico appellant again asked to be sent to a physician for treatment; and his request was granted by the master, but not until the next day. The physician to whom he was sent at that place lanced appellant's hand and repeated the instructions that he was not to continue at his work. This time the physician's instructions were carried out. An apprentice seaman took appellant's place as oiler, and the master testified that he would not have permitted appellant, even though the latter had been willing, to do any work which would require the use of his hand. On arrival at Houston two days later, appellant was placed in a hospital where he remained from June until October. After he left the hospital he returned there for treatment which was continued until the following February, when, all having been done for his hand that could be, he was discharged as a patient. At that time the third finger was stiff and practically useless, and at the trial it was still doubtful whether the use of the other fingers could ever be regained. The surgeons at the Houston hospital gave it as their opinion that the condition of appellant's hand was caused not so much by the original infection as by using it and thus permitting the infection to spread after leaving Kingston. There was no effort on the part of the ship to minimize appellant's pain and suffering; that it was very severe now stands admitted. Appellant's wages were $2 a day. He was paid at this rate up to the time he left the hospital and by mistake $20

in addition. It is evident from the decree that the district judge intended to allow maintenance at the same rate during the time he was treated by the surgeons at Houston after he left the hospital, but as is admitted that additional time amounted to 143 days.

It is proper to allow for maintenance and cure $2 per day for the 143 days appellant received treatment after he left the hospital and up to the time the condition of his hand became static. Under the facts of this case the payment of maintenance should not have ceased the moment the seaman was able to leave the hospital, but should have been continued for a reasonable time and until it became apparent that the injury could not be benefited by further treatment. The Montezuma (C. C. A.) 19 F.(2d) 355; Skolar v. Lehigh Valley R. R. Co. (C. C. A.) 60 F.(2d) 893. The decree on account of maintenance and cure should be for $286 less $20 overpayment, or $266.

In our opinion appellant is also entitled to recover damages because of the failure on the part of the master to provide him with proper medical care and attention. It is settled that the shipowner is under a duty to furnish medical aid to a seaman who suffers injury or becomes ill in the service of the ship, and damages for neglect of this duty may be recovered in a proceeding in rem. The Iroquois, 194 U. S. 240, 24 S. Ct. 640, 48 L. Ed. 955; Cortes v. Baltimore Insular Line, 287 U. S. 367, 53 S. Ct. 173, 77 L. Ed. 368. Except in the face of danger to the ship or other emergency, to require an injured or sick seaman to perform work substantially detrimental to his condition is in effect to fail and refuse to provide that care and attention to which he is entitled under the law. There was here no need to require appellant to work; the master experienced no difficulty in substituting in his place another member of the regular crew to stand watch as oiler between Tampico and Houston. Recovery of damages was denied by the district judge upon the finding of fact that appellant "was not required to but voluntarily did some work." We are unable to agree that the weight of the evidence supports this conclusion; on the contrary we think it fairly shows that appellant was required by the master to stand all his watches regularly, and that he did so involuntarily and only because of the orders he received from the master. No fault is found on account of lack of attention before the ship reached Kingston. Appellant's request to be sent to a physician immediately upon arrival

there shows clearly that he was worried about the condition of his hand. The fact that the master delayed until the next day suggests a belief on his part that the injury was a trifling one, a belief he was too prone to indulge in until after the damage was done. It is hardly open to doubt that the physician's note was a written statement that appellant should not use his hand or continue to carry on his work on board ship. It is highly improbable that so formal a document as this note was would have been drawn up merely for the purpose of giving directions how to apply the solution. It would be passing strange if appellant, believing his hand to be in a serious and dangerous condition, after insisting upon consulting a physician and receiving benefit from the treatment prescribed, should deliberately ignore the physician's advice and the master's orders, and voluntarily return to his work. It would be more remarkable still if appellant, after the swelling increased and the pain became more intense, should insist upon being permitted to continue his work. The master's testimony that he ordered appellant not to work and believed his order was being obeyed lacks material support in the testimony of the chief engineer and his assistants. The chief engineer failed to corroborate the master by agreeing that he reported appellant was not doing anything, but on the contrary testified that he had seen appellant working in the engine room. Either the master was mistaken or the chief engineer made a false report to him. There is no doubt that appellant complained to the third assistant that the pain in his hand was so severe that he was working under great difficulty. It matters not that the first and third assistants encouraged appellant to continue to stand his watch or that in obedience to the evident wishes of the officers he did not refuse to obey orders. The master's failure to allow appellant to consult a physician immediately upon arrival at Tampico but confirms his indifferent or thoughtless attitude during the preceding four or five days. Apparently not until the ship was about to sail from Tampico did he finally realize that appellant's hand was really in a serious condition. His testimony is too obviously an effort to avoid the consequences of his mistake to entitle it to controlling weight.

We think $2,000 is a reasonable sum to be awarded as damages. The decree of the District Court is reversed, and a decree will be entered in this court for $266 maintenance and $2,000 damages, with interest thereon from the date hereof at the rate of 6 per cent. per annum, the legal rate of interest in Texas.