GODBOUT v. EASTERN STEAMSHIP LINES, Inc.

GODBOUT v. UNITED STATES.

Civ. A. No. 6675.

In Admiralty No. 1491.

United States District Court
D. Massachusetts.

Feb. 17, 1949.

John M. Fogarty, of Lynn, Mass., for Godbout.

Arthur J. Santry and Putnam, Bell, Dutch & Santry, all of Boston, Mass., for Eastern S. S. Lines, Inc.

William T. McCarthy, U. S. Atty. and Edward O. Gourdin, Asst. U. S. Atty., both of Boston, Mass. (Arthur J. Santry and Putnam, Bell, Dutch & Santry, all of Boston, Mass., of counsel), for United States.

SWEENEY, Chief Judge.

In these two actions the plaintiff has sued both the United States, as the owner of the S.S. Claymont Victory, and the Eastern Steamship Lines, Inc., as operating agent, for damages arising out of an injury which occurred while the plaintiff was employed as a member of the crew. The injury did not occur aboard the vessel and had no connection with the plaintiff's employment. The claim against both defendants is for negligent treatment or failure to treat the injury which was incurred ashore.

### Findings of Fact

On December 19, 1946, plaintiff's attorney notified the defendant, Eastern Steamship Lines, Inc., that the plaintiff had a claim against the company for injuries received aboard the vessel. On December 23 the receipt of this letter was acknowledged and the plaintiff was advised that the underwriters would undoubtedly get in touch with him in the near future. Plaintiff waited more than sixty days, and the claim not having been allowed or disallowed under the regulations it was deemed to be disallowed so that suit could be brought. I therefore find that suit against the United States is properly laid on the Clarification Act. 50 U.S.C.A.Appendix, § 1291.

The plaintiff was the chief cook aboard the Claymont and had made nine trips with

her to European waters. On April 6, 1946, the ship was anchored at Bremerhaven, Germany, and the plaintiff went ashore on authorized leave. Sometime that evening, while attempting to board a truck, he fell and suffered a fractured os calcis. Some of his associates brought him back to the ship in a jeep and he was carried aboard and deposited in his bunk.

The next morning the purser examined his foot and it was recommended that he report to an army hospital ashore for treatment. He was accordingly taken to the hospital where X-rays were taken and he was returned to the ship. A claim is made that the plaintiff had to return to the ship because the captain refused to allow his papers to be sent to him at the hospital so that he could be either treated or discharged. I do not find this claim to be supported by the evidence. The claim is also made that the captain was negligent in failing to discharge the plaintiff from the ship so that he could receive hospital treatment. There was aboard the ship as a passenger an army doctor whose duty it was to treat all persons aboard. Although this physician is an eye, ear, nose and throat specialist in civilian life, I find that he was qualified by education, and his recent training and experience in the army to treat this injury competently. Dr. Jessel examined the plaintiff when he came back from the hospital, and later secured from the hospital the X-ray reports and a statement from a hospital surgeon to the effect that the plaintiff was transportable; that is, that he was in such a condition as made it proper for him to be aboard the vessel. The vessel sailed that same day. On the third day, the swelling having subsided, Dr. Jessel put the man's leg in a cast extending to the knee. This was for the purpose of immobilizing the leg. On the twelfth day the ship landed at New York and the plaintiff was taken to the Marine Hospital where the cast was removed, and five days later a closed reduction of the fracture was done. He stayed in this hospital for about six weeks and then returned to his home in Lynn. On or about July 1, he went to the Marine Hospital in Brighton where the walking cast was removed. He remained in the hospital until about July 25 when he returned home. He reported to the hospital at intervals until January 28, 1947. He is still having pain and discomfort and a further operation to remove the cause of the pain is advised. He now suffers a shortening in that leg with some interference with the normal motion of the foot.

It is to be noted that the claim is not for damages for an injury arising aboard the vessel but for an aggravation to the existing injury or, stated in another way, negligence in failing to give the plaintiff the proper care. I do not find anything in either claim. The question of aggravation is too indefinite, and the degree of aggravation is probably not susceptible of proof. By that I mean that it cannot be said with any degree of certainty that the end result obtained in this case would have been any different if the plaintiff had been hospitalized in Bremerhaven and his leg set there.

I cannot find any neglect on the part of the vessel or its officers. They were not insurers and, before recovery could be had, it must be shown that there was some neglect which caused or aggravated the injury. The captain interviewed the army doctor and discussed with him whether the plaintiff should be put ashore at Bremerhaven. The doctor assured the captain that he had been advised by the hospital surgeon that the man was transportable. He had also seen the X-rays and he advised the captain that, while he did not relish taking a cot case to sea, nevertheless there was sufficient equipment to treat the man aboard and that he was transportable. The captain, apparently relying on this information, brought the man back to New York. This may have been an error in judgment but it could hardly be called negligence. The captain relied on the best information which he could get, and this only after having made attempts to have the man discharged before a Consul or other officer so that he could be admitted to the hospital. I find and rule that there was no neglect on the part of the officers of the Claymont or any of its crew.

Cure and Maintenance

Since this injury was incurred not as a result of the man's own misconduct he

is entitled to cure and maintenance at the ship's expense. Since the cure has been provided in the Marine Hospitals and since a future operation can be obtained in a Marine Hospital, the plaintiff would be entitled to be maintained at the ship's expense during a period when he was convalescing from his operations and unable to work. Of course it is impossible to forecast with certainty the period of convalescence which will be required after his next operation but, allowing for a period of approximately six weeks and for the periods in 1946 when he was not maintained in hospitals (between June 7 and July 1, and July 25 and August 23), I think that this plaintiff should recover the sum of $732.00.

## Conclusions of Law

I conclude and rule that the plaintiff has failed to establish the negligence of the defendants or any of their employees or servants, or of any other crew members. I conclude and rule that the plaintiff is entitled to recover cure and maintenance as set forth above.

Judgment in the amount of $732.00 is to be entered against both defendants but execution is to issue against one only.