## GRAHAM v. ALCOA S. S. CO., Inc.
### No. 10497.

United States Court of Appeals
Third Circuit.

Argued Nov. 18, 1952.

Decided Jan. 15, 1953.

Rehearing Denied Feb. 6, 1953.

Samuel J. Stark, Philadelphia, Pa., for appellant.

Thomas E. Byrne, Jr., Philadelphia, Pa. (Springer H. Moore, Jr., and Krusen, Evans & Shaw, Philadelphia, Pa., on the brief), for appellee.

Before McLAUGHLIN, KALODNER and STALEY, Circuit Judges.

STALEY, Circuit Judge.

This is a seaman's action at law for damages for the consequences of the alleged negligent failure of defendant to provide maintenance and cure or, more specifically, to provide an operation to correct a ventral hernia.[1] After his evidence was in, plaintiff's case was dismissed, and this appeal requires that we decide whether the question of defendant's negligence should have been left for decision by the jury. We think the result reached by the district court was correct.

Considering the evidence in the light most favorable to plaintiff, the facts are as follows:

Plaintiff, DeLey R. Graham, was a member of the crew of the "Arthur M. Hulbert," a vessel operated by defendant. On May 4, 1948, while on shore leave in Las Piedras, Venezuela, he was shot and robbed by two natives. He was hospitalized in Venezuela and underwent major surgery to repair the damage to his colon and abdominal wall. Defendant paid the hospital and medical expenses. Upon his discharge from the hospital on July 15, he was returned to the United States by plane at defendant's expense. Upon his arrival in New York city, he went to defendant's offices to get his pay and, while there, exhibited to defendant's paymaster the medical report given

1. The complaint alleged two other causes of action. The second was a claim for earned wages and "waiting time." Rev. Stat. § 4529 (1875), as amended, 38 Stat. 1164 (1915), 46 U.S.C.A. § 596 (1944). The third was a claim for unearned wages and maintenance and cure under the general maritime law. Plaintiff has been successful on the second claim, and the third was transferred to the admiralty side in accordance with our decision in Jordine v. Walling, 3 Cir., 1950, 185 F.

2d 662, and has not yet been determined. The posture of the case here is rather awkward in that plaintiff is one step ahead of himself. That is, he wants damages for the alleged failure to supply maintenance and cure before his separate action for it has been determined. Since his case was dismissed, however, for the purposes of this decision, we must assume that plaintiff was entitled to maintenance and cure.

him by the doctor in Venezuela.[2] On July 19, 1948, he was admitted. to the United States Marine Hospital at Baltimore, where he was operated upon for the repair of a hernia which had resulted from the wound and the operation in Venezuela. He was discharged from the hospital at Baltimore in October of 1948 as fit for light duty and, shortly thereafter, began soliciting magazine subscriptions, an employment he had arranged for before his discharge. When he left the Baltimore hospital, his incision was still draining and he administered to himself and, as he traveled about, he stopped at various United States Public Health Service installations to have the incision dressed. In November of 1948, he first noticed a bulging in his abdomen. In December, at the Public Health Service clinic in Jacksonville, Florida, he was told that he had better take it easy. Following that advice, he quit the magazine job and went to stay at his brother's home. On January 19, 1949, at the behest of defendant's counsel, he was examined by a Dr. Parker who "found there is a definite bulging and protruding area as shown between the original midline incision and the general colostomy location * * *."[3] Dr. Parker reported these findings to defendant. In February of 1949, plaintiff returned to sea as an able bodied seaman and served in that capacity on two vessels but was forced to ship on the third and fourth as an ordinary seaman because the pain and weakness in his abdomen prevented him from performing the more rigorous duties of an able bodied seaman. He has suffered from pain in his abdomen and an "empty feeling" ever since

the injury. In January of 1950, he left the sea and a few months later obtained work ashore. The complaint was filed in August of 1948 while plaintiff was still a patient at the hospital in Baltimore.

At the trial, plaintiff's medical witness testified that, in his opinion, based on an examination in May of 1951, two days before trial, plaintiff was then suffering from a ventral hernia, and that the language of Dr. Parker's report indicated that plaintiff was suffering from the same hernia when Dr. Parker examined him, and that plaintiff should then have been advised to have it repaired by surgery.

Plaintiff grounds his claim for damages on the following theory of negligence. He is suffering, and has suffered for some time in the past, from a traumatic ventral hernia which is the direct result of the gun shot, the operation in Venezuela, and the operation in Baltimore and which requires correction by surgery; defendant had notice of plaintiff's medical history, as shown by defendant's knowledge of his original injury and the consequent surgery in Venezuela and Baltimore and the prognosis by the doctor in Venezuela;[4] defendant, being aware of that medical background, should have known, when Dr. Parker found a bulging in plaintiff's abdomen, that that bulge indicated that he had a hernia and that surgery should then have been advised and offered; under defendant's duty to provide maintenance and cure, it was obliged to provide surgical care; defendant negligently failed to fulfill that obligation thus subjecting plaintiff to unnecessary pain and suffering, the danger of a strangulated her-

---

2. After describing plaintiff's injury and the treatment given, the report continues as follows:

"The progress in this case has been very satisfactory. There was no necrosis and recently the above mentioned piece of intestine has been reintegrated in the abdominal cavity by natural process.

"During the operation it was necessary to widen the initial incision into the form of an L.

"We thought that another operation would be necessary to re-introduce into the abdominal cavity that part of the colon which had been exteriorized, but, as has already been stated, this has come

about by natural process. The wound has healed well.

"However, the possibility of eventration through the weakness of the abdominal wall remains, and for this reason we have advised the patient to consult a surgeon on his arrival in the U.S.A." Report of Dr. A. de J. Manzanilla, Chief Medical Officer, Cardon Hospital.

3. Dr. Parker was not called to testify. The statement quoted above was entered in the record by plaintiff's counsel, with the acquiescence of defense counsel.

4. See note 2, supra.

nia, and preventing him from working as an able bodied seaman; therefore, defendant must pay.

Plaintiff relies on The Iroquois, 1904, 194 U.S. 240, 24 S.Ct. 640, 48 L.Ed. 955; Cortes v. Baltimore Insular Line, 1932, 287 U.S. 367, 53 S.Ct. 173, 77 L.Ed. 368, and particularly on this court's decision in Sims v. United States, 3 Cir., 186 F.2d 972, certiorari denied, 1951, 342 U.S. 816, 72 S.Ct. 31. This is not an action for failure to give proper medical care *aboard ship,* however, so that the Iroquois and Cortes cases are not precisely apposite. Plaintiff must sink or swim with the Sims case.[5] In Sims, a suit in admiralty, we held the defendant liable for its failure to supply maintenance and cure, but we limited liability to damages for those consequences occurring after notice to defendant of libellant's need of care and of his inability to procure it because of indigence.

■■ As the trial unfolded in the district court, it became evident that the crucial issue was whether there was evidence sufficient to sustain the conclusion that defendant was negligent as of January 19,

1949,[6] when its doctor, with plaintiff's medical history in mind, examined him and failed to recognize the bulge in his abdomen as a hernia and recommend corrective surgery. It is not contended that an express demand was made that defendant provide further surgery. Such a demand was made in the Sims case and was the basis of our decision there. Thus, plaintiff is reduced to the contention that, although he never asked defendant to furnish surgical care, defendant was aware of sufficient facts concerning his physical condition that it had a duty to search him out, inform him of the need for surgery, and offer it to him.

To sustain that contention, plaintiff relies on the testimony of his medical witness [7] to the effect that plaintiff had a ventral hernia on January 19, 1949, and that he should have then been advised to have it repaired by surgery. Thus, plaintiff's charge narrows down to one of vicarious liability for malpractice or negligent diagnosis. It is not said that Dr. Parker found that plaintiff had a hernia and that surgery was then necessary and advisable for its correction. The claim is that the language

---

5. In The Troy, D.C.W.D.N.Y.1902, 121 F. 901, the injured seaman was granted compensatory damages for the suffering he endured because he was not given proper care after the termination of the voyage. See the discussion of this problem and of the Sims case, which is said to be a departure from the general rule, under special circumstances, in 2 Norris, The Law of Seamen § 574 (1952).

6. The excerpt from the record, set out below, shows that plaintiff abandoned any charge of negligence based on events occurring before January 19, 1949.

"Mr. Stark: * * * The defendant examined this man on January 19, 1949, and the defendant found that plaintiff had a definite bulging and protrusion. * * *

"Plaintiff had notice of it on January 19, 1949, by virtue of examination of Dr. Parker, who reported such to the defendant.

"* * * *

"The Court: Where is there any basic negligence here?

"* * * *

"Mr. Stark: There is negligence to perform the duty they were obliged—

"The Court: What duty?

"Mr. Stark: The duty to furnish him

maintenance and cure that he needed ever since they knew about it, January 19, 1949 * * * "

The complaint was filed on August 10, 1948, while plaintiff was being given maintenance and cure at the United States Marine Hospital in Baltimore. Obviously, at that time, he had no cause of action for defendant's failure to supply what plaintiff was then receiving.

Furthermore, there is no duty to provide maintenance and cure for the period during which the seaman is a patient in a United States Marine Hospital. Ward v. American President Lines, D.C.N.D. Cal.1951, 95 F.Supp. 609; Benjamin v. United States, D.C.S.D.N.Y.1950, 92 F. Supp. 489; Robinson v. Swayne & Hoyt, D.C.S.D.Cal.1940, 33 F.Supp. 93; Fleischman v. United States, D.C.E.D.N. Y.1934, 7 F.Supp. 373. See also Calmar Steamship Corp. v. Taylor, 1938, 303 U. S. 525, 531, 58 S.Ct. 651, 82 L.Ed. 993; The Balsa, 3 Cir., 1926, 10 F.2d 408.

7. There was a motion to strike this witness's testimony relating to his surgical recommendations, after he stated on cross-examination that he had never done any abdominal surgery. This motion was later withdrawn, however.

of Dr. Parker's report means that the condition which he did find was in fact a hernia and that he should have recognized it as such and advised corrective surgery then. This is the heart of plaintiff's case; without the testimony of his doctor there would be nothing upon which to predicate negligence. But we think even with that testimony there was not enough to go to the jury. The doctor did not say that Dr. Parker was wrong in not recommending surgery in January of 1949. He said that, in his opinion, Dr. Parker should have so advised. But he also stated that competent surgical men could reasonably differ on the advisability of a third operation under the circumstances existent here; that is, a third incision in the same spot where one incision has been made to repair the bullet wound and a second has been made, and failed, to correct a ventral hernia. This is not evidence of negligence. It is simply a difference of opinion on a question on which plaintiff's own doctor admits there is room for difference. As far as we know from this record, in January of 1949, Dr. Parker was of the opinion that a third operation was not advisable.[8] In May of 1951, plaintiff's doctor was of a different opinion. This shows only a failure to agree, not that he who disagreed was negligent. To allow the lay jury to resolve this disagreement would be to let it decide a medical question upon which the doctors are divided. Plaintiff had the burden of establishing that Dr. Parker was negligent in some phase of his examination or recommendation. This he failed to do. It is conclusively established that a physician is not liable for errors of judgment[9] if he brings to his treatment that skill and care ordinarily exercised by his professional breth-

ren.[10] If competent medical men can reasonably differ as to the best of several courses, the doctor is not negligent in pursuing one of them though a part of the profession may believe that another course might have produced better results. That is the situation here.

The judgment of the district court will be affirmed.

---

8. Dr. Parker's opinion appears to have been confirmed because two days after his examination, plaintiff was examined at a United States Public Health Service clinic and was pronounced fit for duty, the report stating: "Multiple healed incisional scars of abdomen. Healed. No evidence of hernia at this time." Even this would not shield defendant, however, if the testimony of plaintiff's doctor had shown any evidence of negligence.

9. In Godbout v. Eastern Steamship Lines, D.C.Mass.1949, 82 F.Supp. 467, the claim for negligent failure to give proper treat- ment was disallowed, the court stating that the captain's failure to put libellant in a shore hospital, relying on the advice of a doctor, may have been an error in judgment but could hardly be called negligence.

10. Hazen v. Mullen, 1929, 95 App.D.C. 3, 32 F.2d 394; Ward v. Garvin, 1938, 328 Pa. 395, 195 A. 885; Duckworth v. Bennett, 1935, 320 Pa. 47, 181 A. 558; English v. Free, 1903, 205 Pa. 624, 55 A. 777; Remley v. Plummer, 1922, 79 Pa.Super. 117. 3 Shearman and Redfield, Negligence § 621 (1941).