Thomas J. MURPHY

v.

George LIGHT.

No. 16569.

United States Court of Appeals Fifth Circuit.

June 10, 1958.

Arthur Roth, Miami, Thomas J. Murphy, in pro. per. for appellant.

Daniel Neal Heller, Miami, Fla., for appellee.

Before TUTTLE, BROWN and WISDOM, Circuit Judges.

JOHN R. BROWN, Circuit Judge.

This case, as part of the considerable flotsam in the wake of the assault committed on Murphy while he was Master of the JESSE II, Murphy v. Light, 5 Cir., 211 F.2d 824, 1954 A.M.C. 908, certiorari denied 350 U.S. 960, 76 S.Ct. 348, 100 L.Ed. 834; Murphy v. Light, 5 Cir., 224 F.2d 944, 1955 A.M.C. 1986; Light v. Murphy, 5 Cir., 257 F.2d 322, —— A.M.C. ——, differs from the admiralty libels relating separately to wages and to maintenance and cure. This was a civil action for trial by jury asserting the claim that because of the negligent failure of the shipowner to supply and furnish adequate medical aid, care, and attention, Murphy, the seaman, had sustained additional damages. The case was for a tortious breach of the implied undertaking to supply maintenance and cure. The question presented here is whether the Trial Court was correct in dismissing this case on the shipowner's motion for summary judgment.

The record is singularly unilluminating. The District Court stated only that " * * * There is no genuine issue as to any material fact in Civil Action No. 6401 and the defendant-respondent is entitled to a summary judgment as a matter of law * * * " without indicating in any way any one of the several possible particulars in which there was or was not an actual good faith controversy. To this must be added the unavoidable confusion which arises where, as we previously pointed out, the principal actor, the plaintiff here, the libellant there, was for a long time (and perhaps still is) a mentally incompetent. And confusion has become rampant with the succession of counsel who have appeared and served for brief intervals from time to time in Murphy's behalf and who have either withdrawn or have

been replaced. And the motion itself [1] was a broadside which brought before the Court practically every paper, deposition, interrogatory, motion and pleading which had been filed by anyone over the course of five years as this nautical engagement continued on its endless course.

A moment's consideration of the nature of this case will demonstrate, we think, that what the Judge did was not the making of a determination that no genuine issue of fact was involved. What he did was to resolve some or all of them against the plaintiff perhaps from a wellgrounded notion that with all of the confusion, uncertainty, contradictions and inconsistencies of this jumbled record, much of it coming from Murphy or his wife, it was inconceivable that a trier could arrive at any other conclusion.

The claim rests on the premise that since there is an obligation by the shipowner properly to supply maintenance and cure to seamen falling sick or becoming injured in the service of the vessel, a failure to perform that obligation gives rise to liabilities which are either essentially tort in nature, or at least akin to them. Cortes v. Baltimore Insular Line, Inc., 287 U.S. 367, 53 S.Ct. 173, 77 L.Ed. 368, 1933 A.M.C. 9; The Point Fermin, 5 Cir., 70 F.2d 602, 1934 A.M.C. 662. The doctrine, which had its origin in the necessitous circumstances of ailing seamen in a foreign or remote place or aboard ship at sea, has been extended under carefully circumscribed conditions to impose a tort consequence on a shipowner for failure to supply or pay for, i.

e., supply the money by which to acquire the essential care, after the seaman has been discharged and is living safely ashore at his own home base. Sims v. United States, 3 Cir., 186 F.2d 972, 1951 A.M.C. 461, certiorari denied 342 U.S. 816, 72 S.Ct. 31, 96 L.Ed. 617; Graham v. Alco Steamship Co., 3 Cir., 201 F.2d 423, 1953 A.M.C. 331, certiorari denied 346 U.S. 832, 74 S.Ct. 32, 98 L.Ed. 355, 1953 A.M.C. 1978; O'Neill v. United States, D.C.Pa., 157 F.Supp. 193, 204, 205, —— A.M.C. ——.

Of course the obligation must be carefully circumscribed because it inflicts on one who breached an obligation essentially contractual in nature damages of a kind which ordinarily are not recoverable for simple breach of contract. Graham makes clear that Sims did not intend to scuttle the traditional notions. For in Graham the Court emphatically stated: "In Sims * * * we held the [shipowner] liable for its failure to supply maintenance and cure, but we limited liability to damages for those consequences occurring after notice to [shipowner] of libellant's need of care and of his inability to procure it because of indigence." [201 F.2d 425.]

But even though held within the narrow compass its nature requires, whether the Sims doctrine is or is not applicable depends primarily on factual matters. Only if we can say, as a matter of law, that there is no genuine controversy about the facts of every one of its essential elements may summary judgment be sustained.

---

[1] "The Defendant-Respondent, George Light, files this, his Motion for Summary Judgment. In connection with this Motion for Summary Judgment the Defendant-Respondent shows that the deposition of Thomas J. Murphy taken on February 25, 1953 and March 11, 1953 in Case No. 1076–M, in Admiralty, United States District Court, in and for the Southern District of Florida, Miami Division, styled Thomas J. Murphy, Libelant, v. Yacht "Jesse", Respondent, which yacht was owned by the Defendant-Respondent; the admissions, pleadings and other matters filed in said case No. 1076-M; the testimony of Thomas J. Murphy taken at the trial in said Admiralty case No. 1076-M; the answers to interrogatories propounded in case No. 1082; the testimony taken at the trial in case No. 1082; the request for admission of facts and genuineness of documents, which are deemed admitted for not having been denied, filed in these cases, and the pleadings herein, all of which are hereby incorporated and made a part of this Motion for Summary Judgment, show that the Defendant-Respondent is entitled to a judgment as a matter of law and that there is no genuine issue as to any material fact."

[2] In this analysis we are not concerned with the problem frequently so vexing whether the plaintiff's response was sufficient to put in issue the "non-controverted facts" set forth in the defendant's motion for summary judgment. For here the defendant's motion incorporated this great mass of material, see note 1, supra, and this, we are confident, was replete with dispute, contention, affirmation and denial. Where the moving papers affirmatively disclose that the nature of the controversy presents good faith, actual, as distinguished from formal, dispute on one or more material issues, summary judgment cannot be used. Bruce Construction Corp. v. United States, 5 Cir., 242 F.2d 873; Inglett v. Everglades Fertilizer Co., 5 Cir., 255 F. 2d 342.

[3] The essence of a Sims maintenance and cure damage claim is that (1) further medical treatment, care and attention was needed; (2) the shipowner was made aware of its need; (3) the shipowner, being thus actually aware, unreasonably failed to supply it; (4) the seaman did not have the means or facilities by which to procure it; and (5) as a consequence the medical condition was made worse.

As to each of these the many papers incorporated in defendant's blunderbuss motion showed the existence of genuine disputes in the sense that a trier of facts, court or jury, could draw different inferences. On (1) testimony of doctors showed that the blow to Murphy's head received in the assault had produced concussion of the brain with post concussion syndrome. Whether this post concussion syndrome was proximately caused by the assault or by a subsequent injury to his head while working in a shipyard some months later, and if the latter, whether that was attributable to the earlier injury, was itself a medical question of fact. One doctor ventured an opinion, perhaps considerably weakened on cross examination, but how much or how far was a question for a trier. It was his opinion that Murphy had sustained a subdural hematoma with severe atrophy to the brain. Another medical report revealed that due to convulsive seizures resulting from the head injury described in the history, he might require treatment for the balance of his life. Of course, much of this evidence reflected seriously on this general outlook, particularly on causation, and there were reports showing him fit for duty at earlier and other times, some however were couched in equivocal terms recommending against working in high places or around machinery.

Of course we intimate nothing on the merits of this medico-legal controversy. The point is that these matters were in dispute and the Judge in summary judgment could not resolve them.

On (2) and (3) the deposition of Mrs. Murphy showed that shortly after her husband's return from his ill-fated Odyssey on Jesse II, the defendant Light and another had called at their home. During the course of this conference, a considerable row arose in which to Murphy's demand that more and additional treatment was needed and which he could not obtain, Light summarily rejected the request on the ground so long but mistakenly held by him that having been the assailant in this affray with a member of the crew of another yacht, Murphy could not look to his shipowner for relief and would have to seek elsewhere for his succor. There was also, on these points, medical evidence that for concussion, brain atrophy and subdural hematoma necessary medical treatment would likely include rest and sedatives over a prolonged period.

When it came to (4) the defendant, and presumably the Court, labored under the misapprehension that if, on the facts shown, Murphy made $6,000 in the year immediately following the assault, there could be no responsibility either for maintenance and cure or failure to supply it. But whether this sum to a family of four was sufficient to allow Murphy to procure this needed and additional medical hospital care was certainly not shown to have been absolute and uncontradicted. At most there was an infer-

ence that it *could* be done. Moreover, this assumed financial ability was offset by graphic proof of financial inability. For in precise figures, letters from the public authorities of Dade County Florida, showed that during a substantial part of this time in 1954 when the doctors were reporting his disability as a post concussion syndrome, his family received over $1500 in public welfare assistance grants for essential groceries. To this was added the proof that unlike the usual seaman who is accorded free medical aid and attention by the facilities of the United States Public Health Service in Marine Hospitals and contract outpatient clinics, this had been denied him since his illness had occurred on a non-documented yacht, not a merchant vessel.

■ As to (5) the medical evidence showed, as discussed above, that a serious permanent condition might have been produced. Since the shipowner's obligation for maintenance and cure continues until such time as the medical condition has become static even though this may be long after the seaman has left the vessel, Calmar S. S. Corp. v. Taylor, 303 U.S. 525, 58 S.Ct. 651, 82 L.Ed. 993, 1938 A.M.C. 341, it was a fact question whether the need for further medical attention continued on into 1954, 1955 or 1956 or later. If it did, and it was not furnished, as the record certainly establishes, then the very nature of the matter presents a medical question whether that has had a deleterious effect. It may be that a defendant could make a showing by categorical and detailed factual affidavits or depositions from doctors of unchallenged competence showing that in a given case there was and could be no dispute on that issue. But the defendant's moving papers here showed no such thing. On the contrary, they showed that for such a condition prolonged rest and sedatives might be needed and if needed, this certainly permitted the inference that injurious consequences flowed from an absence of such "essential" treatment. Where the medical evidence relied on in the moving papers reveal, as it does here, that the medical condition may have required, or will likely require, further care, the movant has failed to demonstrate that, as a matter of law, there can be no controversy on the basic claim that as a result of the shipowner's failure to procure and provide the necessary medical aid and attention or supply the cash with which the seaman could procure it, the medical condition was made worse. Gray Tool Co. v. Humble Oil & Refining Co., 5 Cir., 186 F.2d 365, 367, certiorari denied, 341 U. S. 934, 71 S.Ct. 854, 95 L.Ed. 1363; 6 Moore's Federal Practice, #56.13 [1] [3].

■ What we have said here has obviously been said to illustrate the existence of genuine controversies reflected in the very papers incorporated in the defendant's motion for summary judgment. Because this simple incident of a seagoing affray has already given rise to so much misapprehension resulting in needless and prolonged litigation and expense, we think it essential to sound a special caveat: we do not hold that the plaintiff has made, or may yet make, out a meritorious case. We hold only that the travail and agony of a time-consuming trial which may well end as adversely to the plaintiff as it did below cannot be avoided by the short circuit of summary judgment. Loudermilk v. Fidelity & Casualty Co., 5 Cir., 199 F.2d 561; 6 Moore's Federal Practice, #56.27 [3]. Since genuine issues of fact are shown to exist by data incorporated in the defendant's moving papers, but which would normally be established in far different form on a traditional trial, we cannot even predict now whether, on such a trial, the Court will be compelled to grant an instructed verdict either at the close of the plaintiff's case or on the conclusion of the whole evidence. Cf. Carss v. Outboard Marine Corp., 5 Cir., 252 F.2d 690, 1958 A.M.C. ——; Millet v. Godchaux Sugars, 5 Cir., 241 F.2d 264.

A trial must be had. On that trial, the Court will, and must be, free to determine on the evidence there offered wheth-

er the plaintiff has brought himself within the restricted limits of the applicable substantive principles. The case was not one for summary judgment.

Reversed and remanded.