**Alison J. DUFFIELD, a minor by her Guardian, Pauline C. Graham, Plaintiff-Appellant, and Elizabeth E. Duffield, Plaintiff-Appellee,**

v.

**AETNA LIFE INSURANCE COMPANY, Defendant-Appellee.**

No. 72-2340.

Summary Calendar.*

United States Court of Appeals, Fifth Circuit.

Jan. 24, 1973.

Eric W. Pappas, Hubert C. Normile, Jr., Melbourne, Fla., for Alison Duffield.

Charles T. Wells, Orlando, Fla., for Aetna Life Ins. Co., Jere E. Lober, Rockledge, Fla., for Elizabeth Duffield.

Before JOHN R. BROWN, Chief Judge, and GOLDBERG and MORGAN, Circuit Judges.

JOHN R. BROWN, Chief Judge:

Trying hard to get under the dry comfortable umbrella which we often raise to protect disputatious matters from the quick disposition by summary judgment, F.R.Civ.P. 56, see Smith v. St. Paul Fire & Mar. Ins. Co., 5 Cir., 1972, 471 F.2d 840, Marsden v. Patane, 5 Cir., 1967, 380 F.2d 489, 491; Gauck v. Meleski, 5 Cir., 1965, 346 F.2d 433; Braniff v. Jackson Ave.-Gretna Ferry, Inc., 5 Cir., 1960, 280 F.2d 523; Robbins v. Milner Enterprises, Inc., 5 Cir., 1960, 278 F.2d 492; Murphy v. Light, 5 Cir., 1958, 257 F.2d 323, the daughter as claimant to proceeds of life insurance policies contends that the trial court erroneously granted summary judgment for the second wife. But the case turns out to be something quite different. Indeed, everything seems to be an afterthought completely unsupported by the record.[1]

Indeed, it is difficult to figure out just what is complained of save the result. The case started out on the basic

---

* Rule 18, 5 Cir.; see Isbell Enterprises, Inc. v. Citizens Casualty Company of New York et al., 5 Cir., 1970, 431 F.2d 409, Part I.

1. So confusing is the theory of the daughter in the light of the printed appendix, we obtained the whole of the original record as specified by the appellant, FRAP 10(b). Not a stitch of evidence or colloquy between court and counsel, the slightest record of any objection to what the Judge did or said, or request that the Judge do otherwise appears anywhere.

question of whether the property settlement provision of the divorce decree[2] or the terms of the father's subsequent formal change of beneficiary[3] controlled.

2. "(d) That Husband will maintain in full force and effect during his lifetime the two insurance policies presently in force on his life with face values of FIVE THOUSAND ($5,000.00) DOLLARS and TWENTY THOUSAND ($20,000.00) DOLLARS, respectively, and agrees that the minor child, ALLISON DUFFIELD, shall be the irrevocable beneficiary on said policies of life insurance. * * *"

3.

AETNA LIFE & CASUALTY
CHANGE OF BENEFICIARY
Aetna Life Insurance Company

Please type or print

Before executing this
card refer to other side.

Employee
  L. M. DUFFIELD (24220)
  Certificate No.
  24220
  Policyholder
  Radiation Inc.
Group Policy No.(s) H–63693

Subject to the terms of the above numbered Group Policy(ies), I request that any sum becoming payable by reason of my death be payable to the following beneficiary(ies). It is my understanding that this designation shall operate so as to revoke all designations of beneficiary and all elections of optional methods of settlement previously made by me under said policy(ies).

| Beneficiary | Relationship | Beneficiary's Address |
|---|---|---|
| Alison Duffield | Daughter | 2002 Vaughn St. Titusville, Fla. |
| Elizabeth Duffield | Wife | 756 Hawthorne Dr. Eau Gallie, Fla. |

(IF MORE THAN ONE NAMED, THE BENEFICIARIES SHALL SHARE EQUALLY UNLESS OTHERWISE STATED ABOVE.).

If this Designation of Beneficiary refers only to a Group Life Insurance policy and if I am also insured for Group Accident Death and Dismemberment coverage, this designation shall apply to both policies unless otherwise expressly stated above. This Designation of Beneficiary shall not apply to coverage, if any, under a Group Accident policy bearing the prefix ACC.

This Designation of Beneficiary is subject to all the CONDITIONS shown on the reverse side of this form.

Witness
/s/ LOIS COX

/s/ L. M. DUFFIELD
Employee's Signature
12–20–68
Date Signed

———◆———

WHEN COMPLETED RETURN TO
EMPLOYER

CONDITIONS

Unless otherwise expressly provided in this Designation of Beneficiary form, if any beneficiary hereby designated predeceases me the share which such beneficiary would have received if such beneficiary had survived me shall be payable equally to the remaining designated beneficiary or beneficiaries, if any, who survive me, but if no designated beneficiary survives me any sum becoming payable under said Group Policy(ies) by reason of my death shall be payable as prescribed in said Group Policy(ies).

If this Designation of Beneficiary provides for payment to a trustee under a trust agreement said Aetna Life Insurance Company shall not be obliged to in-

The trial court agreed with the daughter and granted her all of two policies, so obviously she cannot complain about the court's legal choice.

■ The real question became just *what* policies [4] were covered by the divorce decree (note 2, *supra*). The daughter by new counsel tries to persuade us that this was a question that surprisingly came up almost at the last minute, so much so that the Judge, in his characteristically informal handling of a non-jury trial, decided the question before anyone (or at least the daughter's then counsel) knew what was going on.

The record, scarce in spots as it might be, simply does not bear this out. In the first place, the daughter's complaint against Aetna not only alleged specifi-

cally the two numbered policies, but expressly charged that the husband had fraudulently attempted to change the beneficiaries of both, in breach of the divorce decree. Next, the second wife in her complaint against Aetna likewise alleged both policies, the change of beneficiary and sought one half of both. And finally, in Aetna's 28 U.S.C.A. § 1335 interpleader action citing both daughter and second wife as competing claimants, there were specific allegations as to the issuance of both policies, the change of beneficiary (exemplified as an annexed exhibit), and the rival claims.[5]

Only one thing affords any basis for the contention of late discovery. That was the trial court's memorandum order of February 22, 1972 [6] which advised counsel that in the Judge's pretrial

quire into the terms of the trust agreement and shall not be chargeable with knowledge of the terms thereof. Payment to and receipt by the trustee shall fully discharge all liability of said Insurance Company to the extent of such payment.

INSTRUCTIONS

If a mistake is made, no erasures or corrections should be attempted, but a new card should be used. The printed material on this card should not be deleted or altered in any way.

If a married woman is to be named, her full given name should be shown—for example, Mary J. Smith, not Mrs. John J. Smith; likewise, if the card is to be signed by a married woman, she should sign her given name.

When two or more beneficiaries are to be named, and they are not to share equally, the fraction each beneficiary is to receive should be shown; dollars and cents should not be specified.

If a trustee is to be named, show the name and address of the trustee and the date of the trust agreement. For example: The —————— Trust Company of Hartford, Conn., as Trustee under Trust Agreement dated ——————.

If there are any questions, you should consult the person handling the group insurance at the Group Policyholder's office.

4. Specifically it was whether the two policies mentioned (one of which was a Metropolitan policy over which there is no

controversy) were confined to the Aetna Group Life policy GL 63693, as to which the daughter got 100%, or encompassed as well the Aetna accident and accidental death policy GG 63693, as to which the court granted one half each to daughter and second wife pursuant to the post-divorce change of beneficiary, see note 3, *supra*.

5. After removal of the daughter's and second wife's suits from the state court, the federal court consolidated these with Aetna's interpleader.

6. "In further consideration of the file in this case for the purpose of entering a final order, a copy of the "Change of Beneficiary" form reveals a change of beneficiary as to both a Group Life Insurance Policy and a Group Accidental Death and Dismemberment Policy. It would appear that there is therefore an issue in this case which has not previously been considered by counsel as to whether the divorce settlement agreement applied to both the Group Life Insurance Policy and the Group Accidental Death and Dismemberment Policy; if it applied only to the Life Policy, then, of course, the Change of Beneficiary form might be effective as to the Accidental Death Policy even though not effective as to the Life Policy.

In order that counsel may be heard on this important remaining issue this case is set for hearing thereon at 11:00 o'clock A.M., Thursday, March 2, 1972."

study of the case he found there was this *factual* question of *what* policies were encompassed within the divorce decree which was in addition to the question previously stipulated [7] to be decided by the court without a jury. It was, however, clear that he contemplated that all issues concerning the rival claims were for Judge, not jury, determination.[8]

Indeed, the parties and certainly the daugher, fully understood that the Judge was to determine the rival claims both as literally described in the stipulation (see note 7, *supra*) and as perhaps broadened by the Judge's memorandum order of February 22, 1972 (see note 8, *supra*). For in response to it counsel for the daughter submitted affidavits of the first wife (mother) [9] and her counsel[10] in the divorce proceedings.

The court properly did not undertake to resolve this on summary judgment. It obviously was for court determination on both fact and law and clear notice was given to counsel of the court's proposed handling.[11]

By a notice so plain that all who ran could read, the court proceeded to hear

7. "H) The following issues of law remain to be determined by the Court:
   (1) Whether the proceeds of the life insurance policy are to be distributed in accordance with the final judgement of divorce or in accordance with the contract of insurance, it being agreed between counsel for the respective claimants that there are *no factual issues* for jury *determination* and that the Court be requested to make a determination of this issue based upon the *facts* as *stipulated* to by the respective claimants and the applicable law. (Emphasis added.)

8. The Judge, with imaginative resourcefulness, had a bifurcated trial. The first part was to a jury on the hotly contested issue of whether under policy GC 63693 death was accidental. The remaining issue of the contest between daughter and second wife was to be determined by the court. To the extent that the factual question of *what* policies were encompassed in the divorce decree was not specifically within the stipulation, note 7, *supra*, the Judge's order of July 30, 1971 postponing the entry of final judgment on the jury verdict expressly provided:
   "Because there is still a dispute between Allison J. Duffield and Elizabeth E. Duffield as to the person or persons entitled to the proceeds of the policy, entry of final judgment will be deferred until the resolution of that remaining issue, which is hereby set for *final non-jury hearing* before this Court, at 2:00 o'clock P.M., Friday, September 24, 1971." (Emphasis added).

9. The affidavit of Pauline C. Graham, the ex-wife of the decedent and the mother of the Plaintiff Alison J. Duffield, stated in part as follows:

   Affiant states that she knows of her own knowledge that the two insurance policies referred to in said Paragraph were a Metropolitan Life Insurance Policy with a face value of Five Thousand Dollars ($5,000.00) and a Group Life Insurance Policy with Radiation Inc., issued by Aetna Life Insurance Company, with a face value at the time of Twenty Thousand Dollars ($20,000.-00). Affiant states that on said date said policies were the only policies in existence on the life of Lloyd M. Duffield, and that neither he nor Affiant owned any other policies of insurance on Lloyd M. Duffield's life.

10. Relevant portions of the affidavits of Martin Budnick, Attorney for Lloyd M. Duffield during the divorce proceedings, read as follows:
    Affiant knows of his own knowledge that at the time the Agreement was entered into, Lloyd M. Duffield was an employee of Radiation, Inc., and that as an incident of his employment, the said Lloyd M. Duffield was covered by a group life insurance policy having a face value of Twenty Thousand Dollars ($20,000.00) at the time. Affiant states that the insurance policy having a face value of $20,000.00 referred to in the aforesaid Paragraph 7, was in fact the same as the group life insurance policy with Radiation, Inc., herein referred to; and that the insurance policy having a Five Thousand-Dollar ($5,000.00) face value was a policy issued by Metropolitan Life Insurance Company, covering the life of Lloyd M. Duffield.

11. The notice dated fixed the hearing for March 2, 1972, see note 6, *supra*. From error in the notice this was subsequently postponed to March 17, 1972.

all the remaining issues impliedly, if not expressly reserved for Judge decision. The record which the daughter specified as adequate for this appeal, FRAP 10(b), is a big round zero either as to the hearing, who was present, what was said and what, if any objections or contentions were made. Nor was this record's silence ameliorated in any way by post-hearing motions or the like.

For all we know, counsel for both daughter and second wife agreed to this procedure, and did not object to the use of the materials the Judge had already discussed (e.g., the change of beneficiary, note 3, *supra*) or to the use of the affidavits (notes 9 and 10, *supra*) the daughter had supplied.[12]

With this silence we cannot in the name of some high sounding equity fault the Judge for not having demanded a more advocative exercise. Nor, operating from the cold void of nothingness can we believe that this patient Judge really did, could or would overbear the sort of lawyers who comprise his bar—and certainly not to the point of thinking that they were then and thereby overborne—and all they could bring themselves to do was to file an unrevealing notice of appeal without a single cheep of a request for action or non-action or objection to the Judge's failure to respond.

■ Only a tag end remains. Once the Judge was permitted to evaluate affidavits he could read the two (notes 9 and 10, *supra*) in several ways. One was that the only policy in contemplation of husband and wife as they approached life's parting of the ways was, as the affidavits specified, GL 63693. And that is what the Judge held.

There it ends.

Affirmed.

12. Out of an abundance of caution, we obtained the transcript of the hearing of March 17, 1972. It is two pages long, most of which is devoted to caption, date, etc. To the objective reader it has all the earmarks of a submission without any contest of the facts. It is completely lacking in any indication that Alison's counsel was dissatisfied with the manner in which the district court chose to dispose of the case—a zero on a zero.