**GRAY v. BERNUTH, LEMBCKE CO., Inc.**

**No. 147 of 1947.**

United States District Court
E. D. Pennsylvania.

Feb. 24, 1949.

Freedman, Landy & Lorry, Philadelphia, Pa., proctors for libellant.

Krusen, Evans & Shaw, Philadelphia, Pa., proctors for respondent.

### KIRKPATRICK, Chief Judge.

This suit in Admiralty brought by a seaman for wages and maintenance and cure was tried before the Honorable David E. Henderson, presiding by special assignment to this district, who has filed his findings of fact and conclusions of law, awarding both wages and maintenance and cure to the libellant. The respondent has moved for a reargument. Without entering a formal order, I heard the parties fully upon their respective contentions, and so that the record may be in proper shape, I now grant the motion for reargument, nunc pro tunc, and will proceed to dispose of the case.

At the reargument I pointed out that, not having been present at the trial, I could not decide one of the two questions presented, without having the testimony before me. The parties did not desire to have the notes of testimony transcribed and accordingly it was stipulated that Judge Henderson's findings and conclusions together with the file from the Clerk's office should constitute the complete record of the case for all purposes. This, of course, amounted to the abandonment of that part of the respondent's motion in which it contended that Judge Henderson erred in making his 6th finding of fact.

The question which remains to be decided by me is whether Judge Henderson's findings of fact support his conclusion that the libellant is entitled to wages and maintenance and cure—more specifically whether the libellant's failure to disclose a nervous condition, existing at the time he signed the contract of employment, bars his claim for maintenance and cure.

Judge Henderson found as a fact that an incident on the voyage caused an aggravation of the libellant's prior existing nervous condition, and it is clear from other findings, and the legal conclusion, that the aggravated condition existed after the libellant signed off on September 11, 1945.

Upon the question of the libellant's nondisclosure, the pertinent fact findings are the following:

"On March 27, 1945, libellant was discharged from the United States Marine Hospital, Baltimore, Maryland; where he had been hospitalized for five days with a diagnosis of 'anxiety state', as fit for duty in three weeks. Libellant gave a history of being nervous for the past 7 years.

"On May 9, 1945, Libellant entered the employ of Respondent as a member of the crew of the Steamship O. M. Bernuth, in the capacity of Fireman/Water Tender, at the base rate of pay of $112.50 per month, plus overtime and found. Libellant, at the time he signed the contract of employment, informed no one of his nervous condition nor of his being acutely anxious and nervously disturbed on certain occasions prior to that date, although he has admitted full knowl-

edge of those events and condition. No physical examination was made of Libellant by Respondent or on its behalf.

"Libellant admitted, in his history prior to his employment aboard the Steamship O. M. Bernuth, that after 2 or 3 weeks at sea he experienced the return of acute tenseness and nervousness; that he did not like the sea but did like the income derived from sea duty.

"During this voyage, libellant was nervous and tense, as the vessel traversed the Pacific Ocean to Pearl Harbor and Eniwetok, Marshall Islands, during the time the United States was at war with Japan, and he was observed by the Second Assistant Engineer, his immediate superior, to be nervous and 'shaky' ".

The rule to be applied was stated by the Circuit Court of Appeals in Lindquist v. Dilkes, 3 Cir., 127 F.2d 21, 24, as follows: " * * * the sailor's duty is to disclose whatever he as an ordinarily prudent person should have known is material to the risk. * * * ", the "risk" referred to being the risk that his condition may cause him to become ill or disabled on the voyage to an extent that will make him a charge upon the ship.

So far as the findings disclose, this libellant knew that he was a nervous man and had been nervous for the past seven years and that he could expect to experience acute tenseness and nervousness after two or three weeks at sea, also, that he did not like the sea.

It seems to me that in attempting to prescribe what an ordinarily prudent person would disclose as material to the risk, one should take into account the difference between physical conditions, such as the hernia from which the libellant was suffering in Burns v. United States, D.C., 62 F.Supp. 603, and conditions known only subjectively to the sufferer, such as that commonly known as nervousness. Countless persons complain of and actually suffer from extreme nervousness, without the slightest thought that the condition is or is likely to become a disabling ailment. The only thing in this case which suggests that the libellant may have had reason to believe

that his condition might prove grave is that, a month and a half before he signed the articles, he had been hospitalized for five days with a diagnosis of "anxiety state". He also knew, however, that he had been discharged as fit for duty in three weeks, and I am not convinced that the episode was sufficient to cause him to believe that he would be likely to develop the psychoneurotic state which caused his subsequent discharge as unfit for sea duty. In the case of a man who has no tangible physical sign of disease or deformity and has experienced no impairment of function, allowance must be made for the natural disinclination to admit to one's self that one is an invalid, as well as for the will to work and earn and the desire to take one's place in the world as a normal person, which usually cause even the "ordinarily prudent person" to discount such things as nervousness and "anxiety state" and to consider them immaterial matters in respect of employment.

I, therefore, find myself in accord with Judge Henderson's conclusions of law and confirm the same.