### SIMS v. UNITED STATES WAR SHIPPING ADMINISTRATION.

No. 297 of 1945, Admiralty.

United States District Court
E. D. Pennsylvania.
March 14, 1950.

Freedman, Landy & Lorry, Philadelphia, Pa., for libellant.

Krusen, Evans & Shaw, Philadelphia, Pa., for respondent.

KIRKPATRICK, Chief Judge.

This is an action brought by a seaman under the Suits in Admiralty Act, 46 U.S. C.A. § 741 et seq., (1) for maintenance and cure and (2) for damages for the withholding of maintenance after the termination of the voyage.

(I)

■ The libellant is entitled to maintenance and cure, substantially as claimed.

He joined the respondent's vessel "William Tyler" as a member of the crew at Philadelphia on September 13, 1944, and served until the termination of the voyage at Houston, Texas, on January 18, 1945. On the first leg of the voyage, from Philadelphia to New York, he became ill after eating a meal, vomited and suffered acute pains in his stomach. He was given medical treatment aboard ship at New York, apparently not for the stomach disorder but for a skin rash which he had. Throughout the voyage he continued to have trouble with his stomach and received medical treatment at a number of ports. On his discharge at Houston he asked for and received from the captain a hospital slip. A short time after leaving the vessel he suffered an attack of severe gastric pain and was taken to a hospital in Houston where he remained two days. Thereafter and up to the present time he suffered more or less continuously from his stomach condition and has been in and out of hospitals on numerous occasions ever since. He has had out-patient treatment and one abdominal operation.

I find as a fact that while a member of the crew of the "William Tyler" under the articles and in the service of the vessel the libellant developed and manifested gastroduodenitis, which condition continued to evidence itself thereafter and during the remainder of the voyage and which, either in its original form or in subsequent phases, has practically incapacitated him for work of the kind of which he is capable up to the present time.

■ The respondent has resisted payment of the claim on a number of grounds, none of which are sustained. Specifically, I do not think that the libellant was under any duty at the time of his employment to disclose the fact that he suffered an illness of undetermined character on a voyage which he made on the "Fort Laramie" some months before shipping out on the "William Tyler". See Ahmed v. United States, 2 Cir., 177 F.2d 898, 1950 A.M.C. 53; Gray v. Bernuth, Lembcke Co., Inc., D.C., 88 F.Supp. 586, 1949 A.M.C. 1992. Whatever the nature of this illness, which resulted in the withholding of his E Certificate by the Coast Guard, the opinion of both the ship's officers and the examining officer of the Coast Guard seems to have been that it was nothing more than seasickness, with a strong suspicion that a great deal of it was malingering. At any rate the Coast Guard, later on, reciting that he had presented medical evidence that he was competent to go to sea, returned his E Certificate to him.

(II)

■ The libellant is not entitled to damages for the aggravation of his illness resulting from the failure to provide maintenance and cure.

The facts on which the claim are based are as follows: At one stage in the course of his various hospitalizations and treatment for his stomach condition the libellant was given a diet list and strict adherence to it, together with extended rest, was advised. The medical testimony established that this regimen was an approved treatment for his condition. He was without money to provide himself with many, if not most, of the items on the diet list; bed rest in a hospital for the necessary period was not available, and he had to make some effort to support himself. The respondent was advised of these facts and refused to pay on the ground that it was not liable for maintenance and cure. There is nothing to show that its position was not taken in good faith. If the money had been paid, the libellant would have been able to avail

himself of the prescribed diet and period of rest. His inability to do so aggravated and prolonged his illness.

The libellant's position in essence is that breach of an obligation to provide maintenance is a tort and that the ordinary rule of damages for tortious wrong applies.

No case has been cited in which a claim has been made for consequential damages for nonpayment of maintenance, after the termination of the seaman's employment, and I can find none. In Cortes v. Baltimore Insular Line, Inc., 287 U.S. 367, 53 S.Ct. 173, 77 L.Ed. 368, it was decided that, although the duty to provide maintenance and cure arises as an incident to a contractual relationship, failure to perform that duty aboard ship may be "negligence" and cause "personal injury" to the seaman within the meaning of those terms as used in the Jones Act, 46 U.S.C.A. § 688; but that was a case of neglect to provide proper medical care on shipboard during the course of a voyage. In terms of performance, there is a difference between the shipowner's duty during the voyage and his duty after it has ended.

On shipboard, maintenance and cure are due in kind and, for obvious reasons, the payment of money has never been thought of as any part of the obligation. What the shipowner owes the seaman during the voyage is food and shelter and, in case of illness or injury, first aid, antiseptics, medicines and such surgery and nursing as is required and within his power to give. Money would do the seaman no good and the employer owes the seaman no money beyond his wages until he is put ashore.

When the voyage has ended the obligation in respect of maintenance and cure continues for a reasonable time but, for equally obvious reasons, the performance is commuted so that it is fully met by providing the seaman with money by which he can maintain himself and get needed medical attention. If the shipowner is ready and willing to pay he cannot reasonably be required to keep track of seamen no longer in his employ and see that they actually get proper food and care. Leaving out of the question the provision for treatment and care of seamen in the Marine Hospitals and by the Public Health Service, which is statutory and does not affect the essential nature of the obligation, it would hardly be contended that a seaman could refuse adequate maintenance offered by his employer in money, and, instead, compel the employer to provide him with a place to live and to buy and deliver to him his food and necessaries.

This being the nature of the obligation, I am of the opinion that the sole remedy is the recovery of the money due. This view is not merely a statement of the well-nigh universal rule of the common law that consequential damages are not recoverable upon failure to pay money due (Williston, Contracts, Sec. 1410) but is based upon the inherent nature of an obligation which arises entirely under the maritime law. "In discussing these questions, it must be borne in mind that the rules which govern and control them must be determined, not from the municipal law, but by the maritime law. The maritime law furnishes entirely different principles upon many subjects from the common law.", Whitney et al. v. Olsen, 9 Cir., 108 F. 292, 297. Analogies are often helpful, but maintenance and cure is a right which simply cannot be fitted into the categories of the common law. It is, I know, difficult to deal with the subject without using the familiar nomenclature of that system but when one reads the decisions they may be confusing unless the unique nature of the obligation be kept clearly in mind. Thus, in Pacific Steamship Company v. Peterson, 278 U.S. 130, 49 S.Ct. 75, 77, 73 L.Ed. 220, the Court referred to the right to maintenance, cure and wages as "implied in law as (not arising out of) a contractual obligation" and in Cortes v. Baltimore Insular Line, Inc., supra, the Court said that abandonment of the obligation was a tort, referring to abandonment during the voyage.

Of course, if, after the voyage has ended, maintenance is not paid when owing and the seaman's illness is thereby prolonged, the obligation to pay will be ex-

tended beyond the time when it otherwise could have been ended and, to that extent, the seaman will be compensated for the delay, but I find no rule of law or policy which extends the recovery beyond that.

The shipowners' burden would be increased far beyond the limits contemplated by the maritime law if in every case in which he honestly, though perhaps mistakenly, feels that no maintenance is due, he were put to the risk of having to respond in consequential damages if he refused it. It can easily be foreseen that under such a rule there would be few suits for maintenance and cure which would not include counts for consequential damages.