### SIMS v. UNITED STATES OF AMERICA WAR SHIPPING ADMINISTRATION.

No. 10278.

United States Court of Appeals
Third Circuit.

Argued Dec. 5, 1950.

Decided Jan. 10, 1951.

Rehearing Denied Feb. 21, 1951.

Abraham E. Freedman, Philadelphia, Pa., for appellant.

Mark D. Alspach, Philadelphia, Pa. (Gerald A. Gleeson, U. S. Atty., and T. E. Byrne, Jr., Robert Cox, Krusen, Evans & Shaw, all of Philadelphia, on the brief), for appellee.

——————◆——————

Before BIGGS, Chief Judge, and GOODRICH and KALODNER, Circuit Judges.

GOODRICH, Circuit Judge.

This case involves a novel point concerning the right of a seaman to maintenance and cure. The libellant, William Sims, brought an action in admiralty against the United States under the Suits in Admiralty Act, 46 U.S.C.A. § 741 et seq. (a) for maintenance and cure and (b) for damages for the withholding of maintenance after the termination of the voyage. The District Court allowed the first but refused the second [1] and the appeal is taken by Sims who alleges error in this refusal.

This is what happened. Sims joined the crew of the ship, William Tyler, at Philadelphia, September 13, 1944. He served until the termination of the voyage at Houston, Texas, on January 18, 1945. The District Judge found as a fact "that while a member of the crew of the 'William Tyler' under the articles and in the service of the vessel the libellant developed and manifested gastroduodenitis, which condition continued to evidence itself thereafter and during the remainder of the voyage and which, either in its original form or in subsequent phases has practically incapacitated him for work of the kind of which he is capable up to the present time."

■ We are content with that finding. The case, it is true, is in admiralty and we are at liberty to substitute our own conclusions if we think they are right and those of the Trial Judge wrong. But appellate courts universally give great respect to the original determination of facts in such cases.[2] And in this situation, although the respondent stoutly argues against it, we think the conclusion of the Trial Judge is well founded.

The legal point arises from the events which occurred after Sims left the William Tyler. He was hospitalized briefly in Houston; he was taken ill on the way back to Philadelphia and, as the finding above shows, has been periodically suffering from his stomach condition ever since. The respondent, up to the time of the rendition of the judgment in this case, had not paid Sims anything for maintenance and cure. It is found as a fact, and we agree with the finding, that "Respondent's failure to provide libellant with maintenance and cure, rendering it economically impossible for him to secure the rest, medication and proper diet prescribed for him aggravated libellant's condition, has made it more difficult to effect improvement and the possibility of a cure of libellant's condition and has caused his condition to become chronic."

The new question in this case is whether the respondent is liable for the consequential damages occasioned by the failure to provide for maintenance and cure after termination of the voyage when it was demanded. Through his attorneys, Sims gave formal notice to counsel for the

1. Sims v. United States War Shipping Adm'n., D.C.E.D.Pa.1950, 91 F.Supp. 90.

2. 4 Benedict on Admiralty 61 (6th ed. 1940).

respondent in June of 1945 of the need for the prompt payment for maintenance and cure in order that the medical directions given Sims for his recovery could be followed. Does the failure of the respondent to pay upon request render it liable for the increased damages resulting from the patient's inability, through lack of funds, to procure the prescribed treatment?

We may regard it as settled that if a man is injured or becomes ill while on a voyage, neglect to fulfill the duty to provide maintenance and cure may impose damages beyond the mere cost of food and medicines. The Iroquois, 1904, 194 U.S. 240, 24 S.Ct. 640, 48 L.Ed. 955. The same rule applies while the seaman is still on the ship, even though it may have reached its destination. Brown v. Overton, D.C.Mass.1859, 4 Fed.Cas. 418, No.2024.[3]

Likewise, it is recognized that the obligation to provide maintenance and cure continues beyond the particular voyage for which the seaman is engaged. Calmar S. S. Corporation v. Taylor,1938, 303 U.S. 525, 58 S.Ct. 651, 82 L.Ed. 993; Farrell v. United States, 1949, 336 U.S. 511, 69 S.Ct. 707, 93 L.Ed. 850. This Court has held that it is not enough to give a sick man a hospital ticket. If he is ill and penniless transportation to the place of treatment must be provided. Murphy v. American Barge Line Co., 3 Cir., 1948, 169 F.2d 61, certiorari denied 1948, 335 U.S. 859, 69 S.Ct. 133, 93 L.Ed. 406.

In the instant case the learned and experienced District Judge concluded that the obligation of the respondent was limited to paying the money due. In other words, respondent must pay Sims what it owed him for maintenance and cure but is not responsible for any consequential damages for not paying it sooner. In spite of our very great respect for his judgment we are constrained to disagree.

This obligation for maintenance and cure is, as Mr. Justice Cardozo says, "imposed by the law itself as one annexed to the employment * * *. The duty * * * is one annexed by law to a relation, and annexed as an inseparable incident without heed to any expression of the will of the contracting parties." Cortes v. Baltimore Insular Line, 1932, 287 U.S. 367, 371-372, 53 S.Ct. 173, 174, 77 L.Ed. 368. It is no more a contract than the obligation of a husband to support his wife is one of contract. Each arises out of a relationship voluntarily entered into. But these duties are imposed by the law as an incident to the relationship, not a matter of contract. We do not think, therefore, that the usual rules of damages for breach of contract to pay money are applicable.

The court found that there was nothing to show that the respondent's position was not taken in good faith. We take it that the respondent thought that Sims was a malingerer or liar, or both, and that his claim was fraudulent. We do not think this lack of bad faith saves the respondent from liability. If Sims was not entitled to money for maintenance and cure of course respondent did not have to pay it But it has been found, and we approve the finding, that respondent is responsible for maintenance and cure in this case. Since by this finding it is established that respondent has been under a duty to provide the maintenance and cure all along, the fact that it did not show bad faith in denying liability does not relieve it from payment. Nor should it relieve it from payment of consequential damages.

We think an analogy may be found in a common situation in tort law. One man hurts another in an accident. The actor fails to provide medical care or to alleviate the harm suffered by the victim honestly thinking that he was not (1) himself negligent or (2) the victim was contributorily negligent. If the trier of the facts disagrees with the actor on these conclusions, defendant is liable for full damages suffered, although some of them

3. In the Troy, D.C.W.D.N.Y.1902, 121 F. 901, a seaman was granted compensatory damages for injuries caused by failure of the ship to furnish proper maintenance and cure after he left the ship upon termination of the voyage.

could have been mitigated by prompt action on his part. We think the same rule applies here and that the respondent refuses to make payment for maintenance and cure at the risk of later being found liable for damages caused by such non-payment if it is determined that the obligation existed.

This is not unusual law, although its application to this situation may be new. It certainly is a general rule that when one violates a duty he is liable for the consequences flowing from that violation. It is true that the duty to pay money for breach of contract is hedged about by some restrictions. Such damages are in general limited to that which the parties may have been supposed to have had in contemplation as a consequence of the breach at the time the agreement was made.[4] But when we deal with the wider rule found in tort such limitations are highly unusual.

Here the respondent failed its obligation to give the libellant maintenance and cure. A consequence of his not having the money to which he was entitled was that his illness was prolonged. We think that respondent must pay the damages consequent upon the prolongation of that illness. We think there is not sufficient difference in the nature of the liability to provide maintenance and cure during the voyage from that after termination of the voyage to require a different rule. Financial inability to secure medical treatment can be as great a barrier as physical inability, and it was in this case.

We think, however, the respondent is not liable for damages resulting from failure to pay between the time when Sims was discharged, January 18, 1945, and June, 1945, when notice of his claim was given. It is true that Sims had a hospital ticket when he left the ship. But that fact, we think, is not enough to give notice to the respondent that here was a seaman who was ill and who would require prolonged medical treatment. Thousands of us have brief periods of illness which quickly pass and do not occasion prolonged expense or suffering. But following the formal notice in June the respondent was kept informed in considerable detail of the libellant's situation, was furnished medical reports, had opportunity to make physical examinations through its own physician and in general was thoroughly briefed as to Sims' condition. It is responsible for all the injuries suffered subsequent to the giving of notice by the libellant in June of 1945.

The judgment of the District Court will be reversed and the case remanded for further proceedings consistent with this opinion.

---

4. Restatement, Contracts § 330 (1932).