

1995 Decisions

5-3-1995

# Deisler v Aggregates

Precedential or Non-Precedential:

Docket 94-5310

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1995

Recommended Citation

"Deisler v Aggregates" (1995). *1995 Decisions.* Paper 119.
http://digitalcommons.law.villanova.edu/thirdcircuit_1995/119

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 1995 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT


No. 94-5310

FRANCIS A. DEISLER
            Plaintiff-Appellee,

v.

McCORMACK AGGREGATES, CO.;
DREDGE "SANDY HOOK", her
boilers, engines, tackle,
appurtenances, etc.
            Defendants-Appellants


ON APPEAL FROM THE UNITED STATES
DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY


(Civil No. 90-2828)

Argued:  October 31, 1994
Before:  GREENBERG, McKEE, Circuit Judges,
    and POLLAK, District Judge.*

(Filed May 3, 1995)


                    GEORGE J. KOELZER (Argued)
                    CAROLYN J. SHIELDS
                    Lane Powell Spears Lubersky
                    333 South Hope Street
                    Suite 2400
                    Los Angeles, California 90071

                    Counsel for Defendants-Appellants
                    McCormack Aggregates, Co;.
                    Dredge "Sandy Hook"

                    GEORGE J. CAPPIELLO (Argued)
                    PAUL T. HOFMANN
                    Cappiello Hofmann & Katz

30 Montgomery Street
Jersey City, New Jersey 07302


*Honorable Louis H. Pollak, United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

Counsel for Plaintiff-Appellee
Francis A. Deisler



OPINION OF THE COURT


McKee, Circuit Judge.

We are asked to decide, among other things, if a seaman's failure to disclose a prior injury on a job application causes the seaman to forfeit his entitlement to maintenance and cure. We hold that, under the circumstances presented here, no such forfeiture has occurred and we will thus affirm the district court's judgment.

## I. FACTUAL BACKGROUND

McCormack Aggregates, Co. operates various dredging vessels in connection with its business of mining sand from the bottom of the sea. Francis Deisler is a seaman who is a member of International Union of Operating Engineers, Local 25 – Marine Division. That union periodically refers workers to employers who operate dredging vessels and equipment. In 1982, Deisler injured his back while he was working on a dredge and he was disabled for about six months. Thereafter, he returned to jobs

involving heavy physical labor including construction work, dockbuilding and dredging.

On August 3, 1988, while Deisler was working as a dredgeman for another boating company, his union referred him to McCormack where he filled out an application for a position as a boatman. That application included the following question: "Do you have any physical limitations which would hinder your performance in the position applied for?" Deisler did not answer the question.[1]

On June 12, 1989, some 10-1/2 months after he filled out the application, Deisler's union told him to report for work with McCormack on June 13.[2] Deisler's application apparently was never reviewed. The sections on the bottom portion of the application labelled "Reviewed By" and "Approved By," which were for "office use only," were left blank.

---

[1] Although there was some dispute at trial about Deisler's prior injury, Deisler offered testimony that he had been pain free for three years prior to filling out the job application. It is undisputed that Dr. Edward Taylor, an orthopedic surgeon, treated Deisler for a herniated disk at L3-4 in 1985, and prescribed medication and exercise. Thereafter Deisler's condition improved and he resumed work as a manual laborer.

Deisler testified that when he filled out the job application, he believed he had no physical limitation which would hinder his job performance with McCormack.

[2] The district court's Findings of Fact state that Deisler reported for work on June 14, 1989. April 26, 1994, Findings of Fact, ¶ 4. However, that appears to be an error. Deisler's uncontroverted trial testimony is that he received the call to report to work on Monday, June 12, 1989 and he reported the next day. See Suppl. App. at 4 (Deisler's trial testimony).

Deisler was injured almost immediately after he began working for McCormack.  The district court described the incident which caused his injury as follows:

> On June 15, 1989, . . . plaintiff suffered an injury while moving a wheelbarrow loaded with supplies along a path on McCormack's property.  This job had been assigned to him by his supervisors, Messrs. Ellis and Melendez, who were, respectively, the tugboat's Captain, and the dredge's Dragtender . . . .  The accident occurred when he [Deisler] rolled the wheelbarrow off the vessel side of the ramp, and the wheelbarrow's wheel went onto the sandy path.  The wheelbarrow became unstable, stopped short, and fell onto its side, spilling its contents.  Plaintiff's forward momentum caused him to tumble and fall over the stopped wheelbarrow.  Immediately after his fall he felt a sharp pain in his back.

April 26, 1994, Findings of Fact, ¶ 5.

The district court found that Melendez and Ellis saw this incident.[3]  Both were in the dredge's dragtender's cabin which was a raised work platform which overlooked the location where Deisler fell.  Melendez testified that Ellis ducked down when Deisler fell so that Deisler would not know that Ellis had witnessed the accident, and that Ellis told him (Melendez) that he had seen Deisler fall.

The following morning Ellis asked Deisler to move some heavy cables, but Deisler complained that his back was hurting. Deisler then left the vessel, went to the company's offices, and

---

[3]  Melendez testified at trial that he saw the aftermath.

began filling out an accident report of his fall and the resulting back injury. Deisler then went to the office next door where he was given a dismissal notice which stated that he was being fired for unsatisfactory work performance.

Before Deisler left McCormack's offices, he took a New Jersey Disability Benefits claim form that he sent to his physician. Deisler's physician completed that form and returned it to McCormack after June 27, 1989. Thereafter, Deisler made a claim for maintenance and cure, and McCormack hired the maritime investigative firm of Lamorte and Burns, Inc. to investigate that claim. Lamorte was succeeded by American Maritime Consultants.[4] Following the investigation of Deisler's claim, both Lamorte and American Maritime recommended that McCormack pay Deisler the requested maintenance and cure, but McCormack refused and Deisler filed suit against McCormack and its dredge under the Jones Act,[5] and under general maritime law.

Those two causes of action were tried simultaneously with the jury sitting as the finder of fact on the Jones Act claim and the court sitting as finder of fact on the general maritime claim. The jury found the defendants were not negligent and

---

[4] Bernard Lillis, McCormack's Chief Financial Officer also investigated Deisler's claim. Lillis delegated some of the investigation to Brad Simek, McCormack's Dredge Superintendent who oversaw the operations of the dredge and its crew.

[5] The Jones Act provides in part that "[a]ny seaman who shall suffer personal injury in the course of his employment may, at his election, maintain an action for damages at law, with the right of jury trial, . . . ." 46 U.S.C. § 688.

returned a verdict in their favor under the Jones Act. However, the district court granted plaintiff's motion for a new trial on the Jones Act claim but plaintiff elected to discontinue that cause of action in favor of his claim for maintenance and cure, and also for compensatory damages, under the general maritime law. The court ruled that plaintiff was entitled to maintenance and cure under general maritime law, and also awarded plaintiff compensatory damages based upon defendants' arbitrary and capricious denial of plaintiff's claim. The defendants[6] appeal from this judgment of the district court.

## II. DISCUSSION

The district court had subject matter jurisdiction over this admiralty action under 28 U.S.C. § 1333. We have appellate jurisdiction over the final judgment of the district court pursuant to 28 U.S.C. § 1291. We review the district court's findings of fact under a clearly erroneous standard. See Sheet Metal Workers Int'l Ass'n Local 19 v. 2300 Group, Inc., 949 F.2d 1274, 1278 (3d Cir. 1991). However, our review of the district court's application of the law to these facts is plenary. See Tudor Dev. Group v. United States Fidelity & Guar. Co., 968 F.2d 357, 359 (3d Cir. 1992).

### A. Maintenance and Cure

The gravamen of McCormack's argument is that Deisler forfeited his right to maintenance and cure when he failed to

---

[6] Hereinafter both defendants will be referenced as "McCormack."

disclose his prior back injury as requested on the employment application.

Maintenance and cure are rights given to seamen who become ill or injured in the service of a vessel.[7] "Maintenance is the living allowance for a seaman while he is ashore recovering from injury or illness. See Vaughan v. Atkinson, 369 U.S. 527, 531, 82 S.Ct. 997, 1000, 8 L.Ed.2d 88 (1962). Cure is payment of medical expenses incurred in treating the seaman's injury or illness. See Calmar S.S. Corp. v. Taylor, 303 U.S. 525, 528, 58 S.Ct. 651, 653, 82 L.Ed. 993 (1938)." Barnes v. Andover Co. L.P., 900 F.2d 630, 633 (3d Cir. 1990). An employer's obligation to furnish maintenance and cure continues "until the seaman has reached the point of maximum cure, that is until the seaman is cured or his condition is diagnosed as permanent and incurable." Barnes, 900 F.2d at 633-34; see also Vella v. Ford Motor Co., 421 U.S. 1, 5 (1975).

The origins of the duty to provide maintenance and cure have been traced to Justice Story in Harden v. Gordon, 11 F. Cas. 480, 482-83 (C.C.D. Me. 1823).[8] The Supreme Court first recognized and defined these rights in The Osceola, 189 U.S. 158, 175

---

[7] It is undisputed that Deisler is a maritime employee who would normally be entitled to maintenance and cure.

[8] For a discussion of the historical underpinnings and evolution of a seaman's right to maintenance and cure see Cox v. Dravo Corp., 517 F.2d 620 (3d Cir. 1975).

(1903).[9]  "The duty was derived from medieval maritime codes,"

Barnes, 900 F.2d at 633, and is interpreted in such a way as to

afford injured seamen the maximum protection of the law.

---

[9]  In The Osceola, a crew member sued for injuries sustained in carrying out an order given by the master.  There was no allegation that the mate or the crew were negligent in their execution of the master's order.  Rather, plaintiff claimed that the vessel and its owners should be liable for the negligent order of the captain in the course of the navigation or management of the vessel.  189 U.S. at 159-60.  The district court held that the vessel was liable in rem for plaintiff's injuries, and the Circuit Court of Appeals certified certain questions of law to the Supreme Court.  The Supreme Court denied recovery.

The Court distilled the substance of the questions before it into the sole issue of whether the vessel owner was liable in rem to one of the crew by reason of the improvident and negligent order of the master.  The Court began its analysis by noting that for the district court's conclusion to be correct, the liability must be founded upon the general admiralty law or upon a local statute of the state in which the accident occurred.  Id. at 168.  The Court then went on to examine the Continental codes and the American case law.  The Court reasoned that while the Continental codes had restricted seamen to the traditional remedy of maintenance and cure, the American cases, perhaps stimulated by the English Merchants Shipping Act of 1876, had allowed recovery of an "indemnity" for unseaworthiness.  However, these cases denied recovery for negligence in "navigation and management."  Based on its review of these authorities, the Court opined:

> That the seaman is not allowed to recover an indemnity for the negligence of the master, or any member of the crew, but is entitled to maintenance and cure, whether the injuries were received by negligence or accident.

Id. at 175.

This proposition was undercut with the passing of the Jones Act, which provided that a seaman who is injured in the course of his employment by the negligence of the owner, master, or fellow crew members could recover damages for his injuries.  See Grant

Viewing seamen as wards of admiralty, the
Court has emphasized that the right to
maintenance and cure must be construed
liberally and has consistently expanded the
scope of the right.  Thus, today a shipowner
is obliged to pay maintenance and cure
regardless of any fault on its part; only
wilful misconduct on the part of the seaman
will deprive him of its protection.

Id.  (citations omitted).  Although conditions have clearly
changed since this concept was first introduced into law, the
right of recovery for maintenance and cure has continued to be a
fundamental component of the relationship between employees and
employers at admiralty.

"[T]he seaman's right was firmly
established in the maritime law long before
recognition of the distinction between tort
and contract."
[It is argued that] the rationale
underlying the right of maintenance, which is
predicated on the special status of seamen as
"wards of the admiralty," is no longer valid.
It is true that almost every case concerning
the right to maintenance relies on Justice
Story's description of the seaman as
"generally poor and friendless, and
acquir[ing] habits of gross indulgence,
carelessness, and improvidence."
[It is also argued that] today those seamen
who are unionized are neither friendless nor
improvident . . . .  Furthermore, the
adjectives "friendless" and "helpless" were
generally used to describe sailors in foreign
ports . . . .
The changed circumstances of the unionized
seaman may undercut the rationale supporting
the traditional right to maintenance and

(..continued)
Gilmore & Charles L. Black, Jr., The Law of Admiralty § 6-2, at
276-277 (2d ed. 1975).

> cure, at least for unionized seamen. However, the Supreme Court has shown no inclination to depart from its long established solicitude for seamen. Until it does so, we see no basis to assume that the emergence of powerful seamen's unions, . . . justifies our ignoring the Court's clear and frequent pronouncements that seamen remain wards of the admiralty.

Id. at 636-37 (citations omitted).

A ship owner's responsibility for maintenance and cure "extends beyond injuries sustained on board ship or during working hours to any injuries incurred in any place while the seaman is subject to the call of duty." Id. at 633; see also Aguilar v. Standard Oil Co., 318 U.S. 724, 732 (1943). As noted above, only the seaman's willful misconduct or deliberate misbehavior relieves the ship operator of this duty. See Barnes, 900 F.2d at 633.[10]

### 1. Deisler's Failure to Disclose His Prior Injury

McCormack contends that Deisler's failure to disclose his prior back injury is the kind of misbehavior which relieves it of the duty it would otherwise have to provide maintenance and cure. However, nondisclosure of a pre-existing injury, without more, will not result in a seaman's loss of maintenance and cure. Such a forfeiture will not occur unless Deisler intentionally misrepresented or concealed medical facts that were material to

---

[10] The duty to provide maintenance and cure is independent of any fault of the employer, and the seaman's contributory negligence does not affect his right to maintenance and cure. The Osceola, supra; Aguilar, 318 U.S. at 731.

the decision to hire Deisler.  In addition, there must be a nexus between the improperly concealed material information and the disputed injury.  See McCorpen v. Central Gulf Steamship Corp., 396 F.2d 547, 549 (5th Cir.), cert. denied, 393 U.S. 894 (1968) (where a seaman is required to provide pre-employment medical information and "the seaman intentionally misrepresents or conceals material medical facts, the disclosure of which is plainly desired, then he is not entitled to an award of maintenance and cure," if the injury is causally related to the concealed medical condition); Wactor v. Spartan  Transportation Corp., 27 F.3d 347, 352 (8th Cir. 1994) (adopting the McCorpen standard); Siders v. Ohio River Co., 469 F.2d 1093 (3d Cir. 1972) (per curiam) (citing McCorpen).[11]  Given the historical importance of a seaman's claim for maintenance and cure, it

---

[11]  In Sammon v. Central Gulf Steamship Corp., 442 F.2d 1028 (2d Cir.), cert. denied, 404 U.S. 881 (1971), the Court of Appeals for the Second Circuit stated that the rule in McCorpen "that any concealment of material medical data, prevents an award for maintenance and cure is not the rule of this Circuit." Id. at 1029.  The Sammon court held that the concealment of a pre-existing condition by the seaman during a pre-hiring interview "is fraudulent only if the seaman knows or reasonably should know that the concealed condition is relevant." Id.  Under that rule, a seaman may claim maintenance and cure for a related injury or illness if, at the time he was asked, he held a good faith belief that the pre-existing condition was not relevant to his fitness for work.  Id.  Even if there is some tension between the rule of McCorpen and the rule of Sammon, see Wactor, 27 F.3d at 352 n.4, it is not relevant to this case, because, as discussed in the text, McCormack has not proven that Deisler's omission was material to its decision to hire him.

should not be lost unless the employee's purportedly wrongful conduct was material to an employer's hiring decision.

The district court concluded that Deisler should have disclosed his prior injury in response to the inquiry on the employment application. The court ruled that McCormack's inquiry into prior injuries created an inference that the information was material to McCormack. The court went on to conclude, however, that this "inference" of materiality was destroyed by the fact that McCormack's decision to deny maintenance and cure was not predicated on the concealment but rather on McCormack's contention that an accident never happened. Suppl. App. at 107–08. In Deisler's view, the district court found that the concealment was not material to McCormack's decision to hire Deisler. But that clearly is not what the district court found. We thus view Deisler's materiality argument as an alternative argument for affirming the judgment. Cf. Mark v. Borough of Hatboro, No. 94–1722, slip op. at 3 n.1 (3d Cir. Mar. 31, 1995) ("we can affirm on a ground which the district court did not rely but which was raised before it.").

Assuming arguendo that the question on McCormack's application created a duty to disclose,[12] the record is

---

[12] McCormack argues that Deisler's failure to cross-appeal means that we must accept the district court's finding that Deisler should have disclosed that he could not perform the work as readily as others because of his prior back injury. The argument is frivolous. Of course, an appellee is entitled to rely on alternative arguments which had been raised in the district court supporting the judgment without filing a cross-appeal, so long as he or she is not seeking to expand his or her rights under the

absolutely clear that Deisler's omission was not material to McCormack's hiring decision. Deisler was never questioned about his failure to answer although McCormack had eleven months to review his job application before he was told to report for work. This is evidenced by the fact that the sections on the bottom portion of the application labelled "Reviewed By" and "Approved By" were left blank. One of the investigators working for Lamorte stated:

> I met with McCormack Aggregates, Mr. Brad Simek, to discuss the hiring of Mr. Deisler and specifically to find out if there was a policy or practice of questioning prospective employees about medical conditions, or if anyone could testify as to any conversations with Deisler that the back condition predated his employment with McCormack. Unfortunately, McCormack is unable to provide me with any such supporting testimony.

Suppl. App. at 182.

McCormack argues that its failure to investigate Deisler's omission is irrelevant. Reply Brief of Appellant at 4. However, McCormack had the burden of proving that the omission was material to its decision to hire Deisler, see Wactor, 27 F.3d at 352; Ruiz v. Plimsoll Marine, Inc., 782 F. Supp. 315, 317 (M.D. La. 1992), and its failure to do so is fatal to its assertion

_____

(..continued)
judgment or limit another's rights. See Mark v. Borough of Hatboro, No. 94-1722, slip op. at 3 n.1 (3d Cir. Mar. 31, 1995).

that Deisler is not now entitled to recover maintenance and cure.[13]

## B. Wages, Compensatory Damages, Prejudgment Interest, Attorney's Fees and Costs

McCormack argues that even if Deisler can recover maintenance and cure, the district court erred in awarding lost wages, damages for pain and suffering, prejudgment interest, costs, and attorney's fees, as those are not an incident of the seaman's contract of employment.[14] McCormack asserts that these damages are an incident of negligence under the Jones Act and that since Deisler elected to dismiss his Jones Act claim after

---

[13] We reject McCormack's contention that we should, here, presume reliance from the simple fact that it asked the question. But there may be situations where courts should presume such reliance. For instance, if a shipowner requires a prospective applicant to submit to a physical examination and/or to fill out a detailed medical history form, the extent to which the employer will be required to submit affirmative proof of reliance should be diminished. It is not that reliance is no longer required; rather, it is that the employer will there have demonstrated reliance by adopting a particular procedure or form. However, where, as here, a general question about past illnesses and injuries is but a single question in a standard form employment application, the situation is markedly different. The question is simply one of many questions on a variety of topics, and the rather vague inquiry into medical history may not ever be reviewed by anyone at all. The employer's interest in the information is significantly less than in the prior examples, and it therefore makes sense to require the shipowner to present evidence of reliance.

[14] Although lost wages are qualitatively different from damages for pain and suffering as the former would certainly be deemed an incident of the seaman's contract of employment, for purposes of our discussion, we will accept McCormack's conflation of these damages.

the trial, the nature of the two causes of action, and the law of the case precludes recovery for these damages under general maritime law.  See Brief of Appellant at 13.

In Cortes v. Baltimore Insular Line, Inc., 287 U.S. 367 (1932), the Supreme Court discussed the impact of the then recently enacted Jones Act upon general maritime law.  The Court stated:

> By the general maritime law, a seaman is without a remedy against the ship or her owners for injuries to his person, suffered in the line of service, with two exceptions only . . . .  A remedy is his also if the injury has been suffered through breach of the duty to provide him with "maintenance and cure."  The duty to make such provision is imposed by the law itself as one annexed to the employment.  The Osceola, supra.  Contractual it is in the sense that it has its source in a relation which is contractual in origin, but, given the relation, no agreement is competent to abrogate the incident.  If the failure to give maintenance or cure has caused or aggravated an illness, the seaman has his right of action for injury thus done to him; the recovery in such circumstances including not only necessary expenses, but also compensation for the hurt.  The Iroquois, 194 U.S. 240 . . . .
> The question then is to what extent the ancient rule has been changed by modern statute . . . commonly known as the Jones Act . . . .  We are to determine whether death resulting from the negligent omission to furnish care or cure is death from personal injury within the meaning of the statute.
> We think the origin of the duty is consistent with a remedy in tort, since the wrong, if a violation of a contract, is also something more.  The duty, as already pointed out, is one annexed by the law to a relation and annexed as an inseparable incident without heed to any expression of the will of

> the contracting parties. For breach of a
> duty thus imposed, the remedy upon the
> contract does not exclude an alternative
> remedy built upon the tort.

Id. at 370-72. Several courts have since cited Cortes for the
proposition that an employee may recover damages resulting from
an employer's failure to provide maintenance and cure. See e.g.
Vaughn v. N.J. Atkinson, 369 U.S. 527, 530 (1962); Murphy v.
Light, 257 F.2d 323, 325 (5th Cir. 1958); Sims v. United States
of America War Shipping Admin., 186 F.2d 972, 974 (3d Cir. 1951).

   In Sims, the district court disallowed a claim for
additional damages in an action for maintenance and cure that a
seaman brought under the Suits in Admiralty Act, 46 U.S.C.A. §
741 et. seq.[15] In reversing we stated:
> The new question in this case is whether
> the respondent is liable for the

---

[15] The Suits in Admiralty Act waives the government's sovereign immunity:

> [i]n cases where if [a United States] vessel were
> privately owned or operated, or if [United States]
> cargo were privately owned or possessed, or if a
> private person or property were involved, a proceeding
> in admiralty could be maintained, any appropriate
> nonjury proceeding in personam may be brought against
> the United States . . . .

Gordon v. Lykes Bros. Steamship Co., Inc., 835 F.2d 96, 98 (5th Cir.), cert. denied, 488 U.S. 825 (1988) (citing 46 U.S.C. § 742 (1982)).
   In effect, the Suits in Admiralty Act is a jurisdictional statute providing for maintenance of admiralty suits against the United States which encompasses all maritime torts alleged against the United States. See id. at 98; United States v. Continental Tuna Corp., 425 U.S. 164, 176 n.14 (1976).

consequential damages[16] occasioned by the failure to provide for maintenance and cure after termination of the voyage when it was demanded . . . .

We may regard it as settled law that if a man is injured or becomes ill while on a voyage, neglect to fulfill the duty to provide maintenance and cure may impose damages beyond mere cost of food and medicines.  The Iroquois, 194 U.S. 240, 24 S.Ct. 640, 48 L.Ed. 955 . . . .[17]

---

[16]  While the district court correctly classified Deisler's lost wages and damages for his pain and suffering as compensatory damages, an award of consequential damages would clearly encompass these compensatory damages.  Compensatory damages serve to compensate for harm sustained by a party.  Restatement (Second) of Torts § 903 (1977).  Consequential damages are merely compensatory damages for harm that "does not flow directly and immediately from the act of a party, but only some of the consequences or results of such act."  Black's Law Dictionary 390 (6th ed. 1990).

[17]  The Iroquois, 194 U.S. 240 (1904), first recognized the principle that the shipowner can be held liable for the damages resulting from neglect in the fulfillment of the duty to provide maintenance and cure.  There, plaintiff seaman sued the vessel in rem to recover damages resulting from the master's failure to provide him surgical treatment and care.  The seaman fractured two ribs and his right leg when he accidentally fell from the main yard to the deck of the vessel.  The master, with the aid of the carpenter, set the leg in splints for five weeks, after which the master found the leg to be in good condition and permitted the seaman to walk about with the aid of a crutch.  However, after arriving at port it was found the bones of his leg were not united and as a result his leg had to be amputated.  Id. at 240-241.  In his suit, the seaman alleged that the master breached the duty owed to him in failing to put into an intermediate port and procure the proper surgical attention.  The district court entered a $3,000 judgment for the seaman which the court of appeals subsequently affirmed.

On appeal, the Supreme Court first noted that it had recently recognized the shipowner's duty to provide proper medical treatment for a seaman who becomes ill or injured in The Osceola.  The Court ultimately held that the master had breached his duty to the seaman by failing to put into an intermediate port sooner.  The Court further held that the fact that the seaman did not request to be taken to an intermediate port was of

> This Court has held that it is not enough to give a sick man a hospital ticket. If he is ill and penniless transportation to the place of treatment must be provided . . . .

Sims, 186 F.2d at 973-74. This obligation is inherent in the seaman's employment, but it is not limited by traditional concepts of contract.

> This obligation for maintenance and cure is . . . "imposed by the law itself as one annexed to the employment . . . . The duty . . . is one annexed by law to a relation, and annexed as an inseparable incident without heed to any expression of the will of the contracting parties." Cortes v. Baltimore Insular Line, 287 U.S. 367, 371-72 (1932). It is no more a contract than the obligation of a husband to support his wife is one of contract. Each arises out of a relationship voluntarily entered into. But these duties are imposed by the law as an incident to the relationship, not a matter of contract. . . . [T]herefore, . . . the usual rules of damages for breach of contract to pay money are [not] applicable. (emphasis added).[18]

(..continued)
no significance because the master was his legal guardian and had a duty to look out for the safety and care of his seamen, whether or not such a request was made. Id. at 247.

[18] We have, however, limited the right to recover additional damages when one is not injured on the open sea. See Graham v. Alcoa S.S. Co., Inc., 201 F.2d 423, 425 (3d Cir, 1953) ("This is not an action for failure to give proper medical care aboard ship, however, so that the Iroquois and Cortes cases are not precisely apposite. Plaintiff must sink or swim with the Sims case."). Graham reasoned that consequential damages would not be allowed where the injury did not occur at open sea unless the sailor first informed the employer of the injury and requested maintenance and cure. Here, as in Sims, Deisler did just that. "In Sims, . . . we held the defendant liable for its failure to supply maintenance and cure, but we limited liability to damages for those consequences occurring after notice of defendant for libellant's need of care and of his inability to procure it

<u>Id.</u> at 974.  Although the court's analogy to the marital

relationship can not withstand the social evolution that has

occurred since the court spoke, the court's pronouncement of the

permissible recovery for failure to promptly provide maintenance

and cure remains valid.  <u>See</u> <u>also</u> <u>Neville v. American Barge Line</u>

<u>Co.</u>, 276 F.2d 117, 120 (3d Cir. 1960).  There, a prior suit had

established that the plaintiff was entitled to maintenance and

cure up until December 4, 1951, and that plaintiff had not yet

reached the point of maximum cure.  <u>Id.</u> at 118-19.  Thereafter,

plaintiff instituted a second suit because no money had been paid

for maintenance and cure after December 4, 1951.  In the second

action, plaintiff sought maintenance and cure, along with lost

wages and damages for pain and suffering.  <u>Id.</u> at 119.  The claim

for consequential damages was based upon plaintiff's assertion

that the failure to provide maintenance and cure prevented her

from obtaining psychiatric treatment, and had thus caused

additional suffering and loss of earnings.  <u>Id.</u> at 120.  A jury

awarded plaintiff maintenance and cure and lost wages as well as

damages for the pain and suffering that resulted from withholding

maintenance and cure.  We reversed the award of consequential

damages because of insufficient proof of causation.  However, we

(..continued)
because of indigence."  <u>Id.</u> at 425.  Here, the district court
concluded that Deisler's pain and suffering resulted from his
inability to afford necessary surgery. Findings of Fact, ¶ 31.

expressly reaffirmed the principle that consequential damages are recoverable for the wrongful failure to provide maintenance and cure. Id. (citing Sims, 186 F.2d at 975). The claim in Neville was brought under general maritime law. Thus, consequential damages for failure to pay maintenance and cure are not limited to claims under the Jones Act. This is consistent with the Supreme Court's decisions in Cortes and Vaughn, supra.

In Vaughn, plaintiff seaman had worked as a taxi driver after becoming ill while in defendant's employ. The employer refused to pay maintenance and cure because it doubted that plaintiff had really been ill. "Ultimately [the employee] was required to hire an attorney and sue in the courts to recover maintenance and cure, agreeing to pay the lawyer a 50% contingent fee." Vaughn, 369 U.S. at 529. The district court granted maintenance and cure but ordered that the amount plaintiff had earned as a taxi driver be deducted from the recovery. The court further limited recovery to damages directly relating to the employer's obligation to provide medical treatment for the sailor. The court reasoned that plaintiff was not entitled to attorney's fees, and could only recover damages which resulted "when the failure to furnish maintenance and cure caused or aggravated the illness or other physical or mental suffering." Id. The court of appeals also denied counsel fees reasoning that they are not recoverable in suits for breach of contract.

The Supreme Court disagreed on both points.  The Court reasoned that "[w]hile failure to give maintenance and cure may give rise to a claim for damages for the suffering and for the physical handicap which follows (The Iroquois, 194 U.S. 240, 24 S.Ct. 640, 48 L.Ed. 955), the recovery may also include 'necessary expenses.' Cortes v. Baltimore Insular Line, 287 U.S. 367, 371, 53 S.Ct. 173, 174, 77 L.Ed. 368." Id. at 530.  The Court reasoned that the shipowner's duty to provide maintenance and cure "was among 'the most pervasive' of all and . . . not to be defeated by restrictive distinctions nor 'narrowly confined.' When there are ambiguities or doubts, they are resolved in favor of the seaman." Id. at 532 (citations omitted).  The Court also rejected the ruling that wages earned as a cab driver should be deducted from any recovery.

> It would be a sorry day for seamen if shipowners, knowing of the claim for maintenance and cure, could disregard it, force the disabled seaman to work, and then evade part or all of their legal obligation by having it reduced by the amount of the sick man's earnings . . . .  This result is at war with the liberal attitude that heretofore has obtained and with admiralty's tender regard for seamen.

Id. at 533 (citing Yates v. Dann, 223 F.2d 64, 67 (3d Cir. 1955)) (if seaman is found to be still in need of maintenance and cure the fact that the seaman is forced by financial necessity to return to his regular employment will not serve as a bar to his recovery).

We therefore disagree with McCormack's assertion that the additional damages that Deisler seeks are limited to the Jones Act. Brief of Appellant at 13-14. We believe that the district court properly awarded Deisler lost wages, damages for pain and suffering, and prejudgment interest arising from McCormack's failure to pay him maintenance and cure.

McCormack further asserts that even where such additional damages and expenses are awarded on a maintenance and cure claim, they are allowed only where there is a willful and wrongful refusal to pay maintenance and cure and that the record here does not support the district court's conclusion that McCormack's refusal to pay maintenance and cure was arbitrary or capricious. As noted above, in Sims we held that consequential damages are allowed in a claim for maintenance and cure in order to make the injured seaman whole, and they are not dependent upon a showing of bad faith. See Sims, 186 F.2d at 974. That holding was based upon the analogous situation in tort law:

> One man hurts another in an accident. The actor fails to provide medical care or alleviate the harm suffered by the victim honestly thinking that he was not (1) himself negligent or (2) the victim was contributorily negligent. If the trier of fact disagrees with the actor on these conclusions, defendant is liable for full damages suffered, although some of them could have been mitigated by prompt action on his part.

Id. at 974-75.

In Morales v. Garijak, 829 F.2d 1355, 1358 (5th Cir. 1987), the court suggests that compensatory damages may not be recovered unless the shipowner's refusal is unreasonable. However, we do not need to address the specifics of this argument as this record clearly supports a finding that McCormack's refusal was not reasonable.

From the outset, the only reason offered for McCormack's failure to pay maintenance and cure was the assertion that no accident had occurred. During the trial, the district court questioned Bernard Lillis, McCormack's Chief Financial Officer, about McCormack's reason for denying Deisler's claim:

> **Lillis**: If one person had come along and said that they saw Mr. Deisler fall over the wheelbarrow I would have changed my decision.
> . . .
> **The Court**: Mr. Lillis has made it very clear that the reason maintenance and cure was denied was because he didn't think the accident ever happened. Isn't that right, Mr. Lillis?
> **Mr. Lillis**: That's right, your honor.
> . . .
> **The Court**: Let me pursue this. Is it your position that the only reason that maintenance and cure was denied was because your company felt that an accident never happened?
> **Mr. Lillis**: That is true, your honor.
> **The Court**: An accident of Mr. Deisler falling over a wheelbarrow on June 15, 1989?
> **Mr. Lillis**: That's correct.
> **The Court**: That is it?
> **Mr. Lillis**: That is it.

(emphasis added). Findings of Fact, ¶ 49 n.5, Suppl. App. at 45-46.

However, McCormack never interviewed Deisler, and although Melendez denied seeing Deisler fall he told Lamorte's investigator that he saw Deisler "dusting himself off" after the wheelbarrow incident.  Suppl. App. at 169.  In addition, Ellis told Lamorte's investigator that he saw "the wheel barrow lying on its side, the bags on the ground, and Deisler standing there kicking his feet."  Id.  Rather than accept that testimony as corroboration that Deisler had been injured, McCormack tenaciously used it to support the rather dubious position that no accident could have occurred because no one saw it.  Finally, McCormack disregarded their own investigators' recommendations that they pay Deisler maintenance and cure.  Although McCormack was under no obligation to accept the recommendations of Lamorte or American Maritime, the district court did not have to ignore McCormack's rejection of its own expert's recommendation.

Similarly, the district court properly noted that McCormack's reason for denying Deisler's claim shifted from pillar to post as the case progressed.

> Defendant's primary defense to the
> maintenance and cure claim was that plaintiff
> lied about an accident occurring.  Second,
> defendant contended that no injury occurred
> even if the incident did.  Third, defendant
> contended that if plaintiff was suffering
> from any condition, which it denied, it pre-
> existed the date of the incident.  Next,
> defendant contended that even if an injury
> occurred, it was fully resolved, and no
> further medical care was necessary.  Thus,
> the presentation of plaintiff and Steve
> Melendez as liability witnesses was
> necessary.  Plaintiff was required to move

>for a new Jones Act trial because of defendant's misrepresentations of material facts.

Findings of Fact, ¶ 59.  That assessment is supported by the record.

It is now for McCormack, not Deisler, to bear the extra cost occasioned by McCormack's intransigence.  This includes the wages Deisler would have been earning had McCormack met its obligation to finance the corrective back surgery, and damages for the pain and suffering he has endured while awaiting that surgery.  See Cortes, supra.

## 1. The Law of the Case

Nor does the law of the case preclude Deisler from recovering consequential damages under general maritime law despite the jury's Jones Act verdict in favor of defendants. "The doctrine of the law of the case dictates that 'when a court decides upon a rule of law, that rule should continue to govern the same issues in subsequent stages in the litigation.'" In re Resyn Corp., 945 F.2d 1279, 1281 (3d Cir. 1991) (quoting Devex Corp. v. General Motors Corp., 857 F.2d 197, 199 (3d Cir. 1988)); see also Arizona v. California, 460 U.S. 605, 618 (1983)[19]; Schultz v. Onan Corp., 737 F.2d 339, 345 (3d Cir. 1984) (the law of the case doctrine applies "to issues that were actually discussed by the court in the prior appeal [and] to issues decided by necessary implication."). While the doctrine most commonly serves to bar litigants from rearguing issues previously decided on appeal, see CPC Int'l, Inc. v. Northbrook Excess & Surplus Ins. Co., 46 F.3d 1211, 1215 (1st Cir. 1995); United States v. Rivera–Martinez, 931 F.2d 148, 150 (1st Cir. 1991); Schultz, 737 F.2d at 345, we have held that the dismissal of an appeal terminates the cause of action and the judgment of the district court becomes the law of the case. See Hook v. Hook & Ackerman, 233 F.2d 180, 183 (3d Cir. 1956).[20]

---

[19] "Unlike the more precise requirements of res judicata, law of the case is an amorphous concept." 460 U.S. at 618.

[20] The "[l]aw of the case directs a court's discretion, it does not limit the tribunal's power." Schultz, 737 F.2d at 345 (citations omitted).

McCormack argues that since Deisler elected to dismiss the Jones Act claim after trial the law of the case precludes recovery of consequential damages under general maritime law. That argument rests upon the mistaken belief that such lost wages and damages for pain and suffering are incidents of negligence under the Jones Act and not recoverable under the general maritime law. As we explained above, such damages may be recovered for the failure to provide maintenance and cure in the absence of a Jones Act claim. Thus, the law of the case is not a bar to plaintiff's recovery.

## 2. Prejudgment Interest.

The award of prejudgment interest was also proper. Unlike attorney's fees and litigation expenses (which were not regarded as part of the merits of judgment at common law) prejudgment interest has traditionally been considered part of the compensation due to a plaintiff. See Osterneck v. Ernst & Whinney, 489 U.S. 169, 175 (1989). The Supreme Court has repeatedly held that prejudgment interest is merely an element of a plaintiff's complete compensation. See id.; West Virginia v. United States, 479 U.S. 305, 310, & n.2 (1987). Interest must be allowed if plaintiff is to be truly made whole for defendant's breach of its duty to provide maintenance and cure. See Vaughn, supra.

## 3. Attorney's Fees and Costs.

Attorney's fees and costs differ from interest, lost wages and damages for pain and suffering because attorney's fees and costs cannot be recovered unless plaintiff can first establish defendant's bad faith or recalcitrance.

> Recognizing the importance of a seaman's right to be made whole through the recovery of maintenance and cure, the federal courts have fashioned a supplemental remedy for instances in which a ship operator's unjustified refusal to own up to its responsibilities to furnish maintenance and cure forces a seaman to incur the expense of a lawsuit to collect that which is due. When a ship operator fails to make a prompt, good faith investigation of a seaman's claim for maintenance and cure or otherwise takes a "callous" or "recalcitrant" view of its obligations, the seaman may recover legal expenses on top of maintenance and cure. See Vaughn, 369 U.S. at 530-531 . . . .

Rodriguez Alvarez v. Bahama Cruise Line, Inc., 898 F.2d 312, 316 (2d Cir. 1990).

However, as stated above, the record here fully supports the district court's conclusion that McCormack's refusal to pay Deisler maintenance and cure was arbitrary and capricious. Accordingly, we will affirm the district court's award of attorney's fees and costs.

### C. Allocation of Fees and Costs

Alternatively, McCormack argues that even if the award of attorney's fees and costs was proper, the district court acted arbitrarily in allocating 90% of plaintiff's attorney's fees to the general maritime claim and refusing to make an allocation of

costs between it and the Jones Act claims. The district court candidly acknowledged that "[g]iven the overlapping evidence on the Jones Act claim and the maintenance and cure claim, it is difficult to separate out services attributable solely to the unsuccessful Jones Act claim." Findings of Fact, ¶ 59. Notwithstanding this caveat, the court held that based on its "review of the record a fair estimate of counsel time expended in attempting to prove defendant's negligence under the Jones Act is 10%." Id.

The district court must exercise its informed discretion in awarding attorney's fees. Pawlak v. Greenawalt, 713 F.2d 972, 977 (3d Cir.), cert. denied, 464 U.S. 1042 (1984) (citation omitted). Thus, our standard of review is a narrow one. "We can find an abuse of discretion if no reasonable [person] would adopt the district court's view. If reasonable [people] could differ as to the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion." Silberman v. Bogle, 683 F.2d 62, 65 (3d Cir. 1982) (citation omitted).

McCormack argues only that "[i]t is inconceivable that only 10% of fees are attributable to the Jones Act jury trial, in which plaintiff unsuccessfully tried many issues not implicated in the maintenance and cure claim." Presented with no more than this assertion of "inconceivability," we cannot say that the division of attorney's fees was an abuse of discretion. Although

the required division of fees is difficult, our review of the record does not allow us to conclude that the district court erred in slicing the pie as it did. Accordingly, we will affirm the district court's allocation of the award of attorney's fees and costs.

### D. The Deposition of Charles Ellis

McCormack argues that it should have been allowed to introduce the deposition of Captain Ellis under Federal Rule of Civil Procedure 32(a)(3) as Ellis was more than 100 miles from the place of trial, was no longer McCormack's employee, and thus was unavailable within the meaning of that Rule. The district court did not allow McCormack to use Ellis' deposition because it found that Deisler took the deposition under the misapprehension that Ellis had not witnessed any part of Deisler's accident. The court reasoned that Deisler was therefore unlikely to have focused upon Ellis' observations during the deposition.

> Plaintiff's counsel's strategy during the Ellis deposition was to avoid creating a deposition record which could be used against his client at trial in the event of Ellis's unavailability at trial. This strategy is a plausible response to defendant's misleading answer to the interrogatory in question.

Findings of Fact, ¶ 12 n.2.

Even assuming the district court erred in excluding the deposition, we believe that any error in this regard was harmless. See McQueeney v. Wilmington Trust Co., 779 F.2d 916, 923–28 (3d Cir. 1985) (errors are harmless if it is highly

probable a party's substantial rights were not affected). The excluded testimony adds little that is not contained in the Lamorte report which the district court did consider. Ellis testified at the deposition that Deisler told him that he (Deisler) was not helping to off-load a cable from the bow of the dredge because he had a bad back. App. at 193. The Lamorte report states that after Ellis asked Deisler to help move some cables Deisler informed Ellis of his bad back, but did not blame it on any mishap with a wheelbarrow. Suppl. App. at 169. Secondly, Ellis testified at the deposition that he saw Deisler pushing the "wheelbarrow" but did not watch him perform the whole job. App. at 195. Similarly, the Lamorte report states that Ellis only saw "the wheelbarrow lying on its side, the bags lying on the ground, and Deisler standing there kicking his feet." Suppl. App. at 169. Finally, both the Lamorte report and the deposition transcript state that Ellis did not learn of Deisler's injury until after Deisler was fired. Suppl. App. at 168; App. at 197.

Thus, any error in failing to admit Ellis' deposition was harmless as the district court considered the same testimony by way of the Lamorte report.

### E. Challenges to the District Court's Findings of Fact

McCormack also challenges a series of factual findings, all of which are supported by the record. We therefore find these

challenges to the district court's findings of fact to be lacking in merit.

First, McCormack claims that the district court erred in finding that plaintiff suffered a job related injury because the finding was based upon an erroneous belief that Ellis had witnessed the accident. There is ample evidence to support the district court's finding that Ellis witnessed the accident. Melendez testified that Ellis observed the event and exclaimed: "Oh, look, he fell. He busted his a...," as he watched. In addition, both Deisler and Melendez testified that the accident occurred.

Second, McCormack claims that the district court erred in finding that plaintiff's accident and his reports of it occurred before plaintiff was notified that he had been fired. Deisler testified that he reported the accident to both Melendez and Ellis before he was fired and that he was filling out the accident report when he was given his dismissal notice. Melendez corroborated part of that testimony. There was testimony that Deisler completed the accident report on June 16, and thereafter had his own doctor fill out and return a New Jersey Disability Form.

McCormack also argues that the testimony of Brad Simek and William Daniel contradict the district court's findings. Simek inferred no accident had occurred because any accident should have been reported to him, and none was. Daniel testified that

Deisler reported the accident to him after Deisler had been terminated.  Regardless of when, if ever, Deisler told Simek or Daniel of his accident, the evidence that Deisler told Ellis and Melendez of his injury prior to being terminated supports the district court's finding.

Third, McCormack argues that the district court erred in finding that the investigation of Deisler's claim was not conducted in good faith.  McCormack claims that the court based this finding upon an equally erroneous finding -- namely, that the only reason McCormack did not pay maintenance and cure was that it believed that no accident occurred and that the medical evidence supporting Deisler's claim was ignored.

We previously detailed the abundance of evidence supporting the district court's finding that McCormack did not rely on Deisler's pre-existing medical condition either in hiring him or in its decision not to pay maintenance and cure.  Moreover, the record supports a finding that all of the evidence which tended to corroborate Deisler's claim was ignored by McCormack.

Finally, McCormack argues that the district court erred in finding that Deisler will reach maximum medical improvement approximately four months after surgery.  McCormack claims that Deisler admitted in his trial testimony that his doctors told him toward the end of 1989 that his medical condition would not improve.  Brief of Appellant at 25.  McCormack claims that the end of 1989, rather than four months after surgery, is the point

of "maximum cure."  However, McCormack's position is based upon an incomplete recitation of Deisler's testimony.  Deisler testified that his doctors told him his condition would not improve <u>without surgery</u>.[21]

## III. CONCLUSION

For the reasons stated above we find that McCormack's arguments are without merit.  Accordingly, the judgment of the district court will be affirmed.[22]

---

[21]     Defendants failed to include the following testimony in their brief:

> Q.    Did Dr. Molzen tell you that surgery would improve your  condition?
> A.    That is a tricky question.  Dr. Molzen recommended surgery for me, yes.  Yes, it would improve my condition.  There is also a threat that it will not be successful, but yes it would help.
> Q.    Dr. Gott, did he tell you that surgery would improve your condition?
> A.    Yes, he did.
> Q.    But they also told you that there were risks involved.
> A.    Absolutely.
> Q.    Is that why you hesitated?
> A.    Yes.

Suppl. App. at 20.

[22]    We will also grant Deisler's motion for reimbursement of the costs associated with Deisler's submission of a Supplemental Appendix.  The Appendix filed by McCormack was inadequate and the editing of the testimony of Melendez and Deisler was so selective as to be misleading. Deisler therefore had to file the Supplemental Appendix to clarify the record.